FILED
2026 Sep-25 PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SOUTHEASTERN CONFERENCE,<br><br>PLAINTIFF,<br><br>v.<br><br>WADE ROUSSE, in his official capacity as President of Louisiana State University, et al.,<br><br>DEFENDANTS. | Civil Action No. 2:26-cv-01586-ACA |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 3

I. THE NCAA ELIGIBILITY RULE TRANSITION PROMPTS LITIGATION OVER RETURNING ATHLETES. ........ 3

II. THE SEC TURNS TO FEDERAL COURT. ........ 5

ARGUMENT ........ 7

I. DISMISSAL UNDER RULE 12(B)(1) IS WARRANTED BECAUSE THERE IS NO ARTICLE III CASE OR CONTROVERSY ........ 7

A. The SEC Has No Article III Standing. ........ 7

B. Alternatively, This Suit Is Moot and Unripe. ........ 10

C. This Suit Is Independently Barred by Sovereign Immunity. ........ 12

II. DISMISSAL UNDER RULE 12(B)(2) AND RULE 12(B)(3) IS WARRANTED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS AND VENUE IS IMPROPER ........ 14

III. DISMISSAL UNDER RULE 12(B)(6) IS WARRANTED BECAUSE THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF. ........ 19

IV. DENIAL OF THE MOTION FOR PRELIMINARY RELIEF IS WARRANTED FOR MATERIALLY IDENTICAL REASONS. ........ 24

CONCLUSION ........ 25

CERTIFICATE OF SERVICE ........ 27

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000)....................23, 24

*Braswell v. Board of Regents of University System of Georgia*,
369 F. Supp. 2d 1371 (N.D. Ga. 2005)....................12

*Christian Legal Soc'y v. Martinez*,
561 U.S. 661 (2010)....................9, 22

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................2, 8, 9

*Edelman v. Jordan*,
415 U.S. 651 (1974)....................2, 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....................17

*Gary v. City of Warner Robins, Ga.*,
311 F.3d 1334 (11th Cir. 2002)....................21

*Harden v. Adams*,
760 F.2d 1158 (11th Cir. 1985)....................12

*Jenkins Brick Co. v. Bremer*,
321 F.3d 1366 (11th Cir. 2003)....................19

*Keohane v. Fla. Dep't of Corr. Sec'y*,
952 F.3d 1257 (11th Cir. 2020)....................10, 11

*Lavina v. Fla. Prepaid College Bd.*,
174 F.4th 49 (11th Cir. 2026)....................2, 12, 13

*Malowney v. Fed. Collection Deposit Grp.*,
193 F.3d 1342 (11th Cir. 1999)....................8

*McKusick v. City of Melbourne*,
96 F.3d 478 (11th Cir. 1996) ....................................................................25

*Missouri v. Biden*,
83 F.4th 350 (5th Cir. 2023), *reversed by Murthy*,
603 U.S. 43 ..........................................................................................20

*Mitchum v. Foster*,
407 U.S. 225 (1972)................................................................................25

*Murthy v. Missouri*,
603 U.S. 43 (2024)..........................................................................7, 8, 9

*Murthy v. Missouri*,
No. 23-411 (U.S. Dec. 19, 2023)...........................................................20

*Nat'l Advertising Co. v. City of Miami*,
402 F.3d 1335 (11th Cir. 2005) ..............................................................11

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024)................................................................................23

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) ..................................................................12

*Pyburn v. National Collegiate Athletic Association*,
No. C-783299..................................................................................4, 5, 19

*Raj v. Louisiana State University*,
714 F.3d 322 (5th Cir. 2013) ..................................................................12

*Roberts v. United States Jaycees*,
468 U.S. 609 (1984).........................................................................21, 22

*Rollins v. Kiffin*,
No. 3:23-CV-00356-MPM-RP, 2024 WL 386925 (N.D. Miss. Jan.
31, 2024), *aff'd*, No. 24-60051, 2024 WL 4054379 (5th Cir. Sept.
5, 2024) ...................................................................................................12

*SkyHop Techs., Inc. v. Narra*,
58 F.4th 1211 (5th Cir. 2023) ....................................................15, 17, 18

*Summit Med. Assocs., P.C. v. Pryor*,
180 F.3d 1326 (11th Cir. 1999) ..........................................................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...............................................................................7

*Walden v. Fiore*,
571 U.S. 277 (2014)..............................................................................17

*Wisne v. NCAA*,
No. 1:26-cv-03063-CNS-KAS, 2026 WL 2214234 (D. Colo. July 31, 2026), *stay pending appeal granted*, No. 26-1309 (10th Cir. Aug. 21, 2026) ...............................................................................3

*Ex parte Young*,
209 U.S. 123 (1908)........................................................................*passim*

**Statutes**

28 U.S.C. § 1391(b)(2)..........................................................................19

28 U.S.C. § 1406(a) ..............................................................................19

28 U.S.C. § 2283 ...................................................................................25

**Other Authorities**

Fed. R. Civ. P. 12 ........................................................................7, 14, 19

Teddy Ricketson,
*LSU Locks Roster, Dae'Quan Wright and Zxavian Harris Will Not Play for the Tigers,*
Yahoo Sports (Sept. 8, 2026), t.ly/H73cR ...............................................4

Trinity Velazquez,
*Louisiana appeals court denies SEC request in NCAA eligibility case*,
WGNO (Sept. 15, 2026), tinyurl.com/3t7c5rcy ....................................................4

## INTRODUCTION

The Southeastern Conference (SEC) filed this suit earlier this month amid lawsuits all over the country involving both the SEC and the National Collegiate Athletic Association (NCAA). In the intervening weeks, material developments have confirmed that this lawsuit was unwarranted when it was filed—and, more importantly, that the lawsuit is unwarranted today. The Amended Complaint (ECF No. 5) should be dismissed and the pending motion for preliminary relief (ECF No. 6) should be denied.

That is principally because there is no Article III case or controversy. The SEC filed its suit and motion for preliminary relief primarily because of claimed fears over Louisiana State University (LSU) rostering certain football players or interfering with an SEC meeting on September 10. The players in question were not, in fact, rostered—and LSU's football roster is full and closed for the 2026–27 football season. The September 10 meeting, moreover, came and went without a problem. The SEC thus faces no imminent, concrete harm that could establish a case or controversy.

Not only that, but insofar as the SEC's core (and odd) complaint is that the SEC suffers First Amendment harm from being forced to associate with LSU, that alleged harm is self-inflicted—and thus not cognizable under Article III. *See*

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). As the SEC acknowledges (ECF No. 5 at 2–3), the SEC has obvious available forms of relief in its bylaws. Any harm from continued association is not forced upon the SEC. Indeed, as only one member of a 16 member unincorporated association, LSU has no power to *force* the SEC to do *anything*. Article III does not countenance invoking federal jurisdiction based on self-inflicted harm.

Whether on standing, mootness, or ripeness, Article III compels the dismissal of this suit—and the denial of the SEC's moot yet still-pending motion for preliminary relief. That is all the Court need say to dismiss this suit.

In all events, dismissal and denial are likewise warranted because the SEC cannot overcome other obvious jurisdictional obstacles to this suit. Each Defendant is a state official sued in his or her official capacity—and thus cloaked with sovereign immunity. The SEC's filings do not even attempt to explain how it can circumvent that immunity. For good reason: It cannot. Black-letter law holds that where a plaintiff sues a state official for "relief that amounts to 'specific performance of a contract to which the State was a party'"—here, "the Conference's Constitution and Bylaws," ECF No. 5 at 43, ¶ 113—the plaintiff cannot invoke the *Ex parte Young* exception to sovereign immunity. *Lavina v. Fla. Prepaid College Bd.*, 174 F.4th 49, 53 (11th Cir. 2026) (quoting *Edelman v. Jordan*, 415 U.S. 651, 667 (1974)).

The SEC's attempt to use a federal court "to enforce its Constitution and Bylaws" is thus squarely barred by sovereign immunity. ECF No. 5 at 44, ¶ 117.

That immunity bar says nothing of the corresponding lack of personal jurisdiction over Defendants or proper venue. And it says nothing of the meritless freedom-of-association claim advanced by the SEC. The Court should dismiss the Amended Complaint on any and all of these grounds and deny the still-pending but now moot motion for preliminary relief.

## BACKGROUND

### I. The NCAA Eligibility Rule Transition Prompts Litigation Over Returning Athletes.

This case arose against a broader backdrop of changes in NCAA eligibility rules. In June 2026, the NCAA adopted a new "5-for-5" model allowing student-athletes to compete for five seasons within five years. But its transition rules (or at least its interpretation of those rules) did not extend that benefit to student-athletes who graduated high school in 2022 and had exhausted their eligibility during the 2025–26 academic year under abandoned rules. Student-athletes around the country soon filed suits seeking an additional season under the new model. *See, e.g.*, *Wisne v. NCAA*, No. 1:26-cv-03063-CNS-KAS, 2026 WL 2214234, at *22 (D. Colo. July 31, 2026) (granting classwide preliminary injunction), *stay pending appeal granted*, No. 26-1309 (10th Cir. Aug. 21, 2026).

Meanwhile, on August 19, a group of athletes filed *Pyburn v. National Collegiate Athletic Association*, No. C-783299, in Louisiana's 19th Judicial District Court seeking recognition of their eligibility for the 2026–27 season. On August 27, the *Pyburn* plaintiffs amended their petition to add the SEC and Commissioner Greg Sankey. The Louisiana court then entered an Amended TRO prohibiting enforcement of specified NCAA and SEC rules and proposed penalties against the plaintiffs and institutions or coaches for which they competed. *See* ECF No. 6-5.

Not coincidentally, on September 3, the same day this case was filed, the Louisiana state court held a preliminary-injunction hearing. The NCAA and SEC appeared only through counsel, and Commissioner Sankey testified on the SEC's behalf (and to some extent discussed NCAA rules as he understood them). At the hearing's conclusion, the court orally granted preliminary relief. Eleven days ago, the Louisiana First Circuit denied the SEC's request for a stay of the preliminary relief. *See, e.g.*, Trinity Velazquez, *Louisiana appeals court denies SEC request in NCAA eligibility case*, WGNO (Sept. 15, 2026), tinyurl.com/3t7c5rcy.

On September 8, LSU filled its football roster for the 2026–27 season and did not place on its roster two *Pyburn* plaintiffs who are players alleged by the SEC (*see* ECF No. 5 at 20–22, ¶¶ 53–56) to be "professionals." The roster is now closed for the 2026–27 season, meaning those players will not be rostered by or compete for the LSU football team. *See* Teddy Ricketson, *LSU Locks Roster, Dae'Quan Wright*

*and Zxavian Harris Will Not Play for the Tigers,* Yahoo Sports (Sept. 8, 2026), t.ly/H73cR.

## II. The SEC Turns to Federal Court.

The news spread fast that the SEC on that same day had filed this suit against LSU in federal court in Alabama. ECF No. 1. After days of speculation regarding whether the SEC membership would or should act to "sanction" LSU (without yet notifying LSU of any violation of SEC bylaws), fifteen SEC Presidents and Chancellors other than LSU President Rousse met on September 4 and discussed LSU. Notwithstanding the request for relief contained in pleadings filed in this matter, neither the SEC nor any member has *ever* produced any evidence LSU sought to stop or otherwise interfere with the September 4 meeting or any other meeting. The meeting was uneventful.

But speculation continued. And the SEC thereafter noticed a September 10 Special Meeting to consider terminating LSU's membership under the SEC Constitution and Bylaws.

On September 8, the SEC filed its Amended Complaint, while the *Pyburn* proceedings remained ongoing. ECF No. 5. The Amended Complaint names as Defendants President Rousse, LSU Athletic Director Verge Ausberry, LSU Football Coach Lane Kiffin, members of the LSU Board of Supervisors, and Attorney General Murrill, all in their official capacities. *Id.*

The SEC's Amended Complaint is difficult to follow, but its core assertion appears to be that Defendants have infringed the SEC's First Amendment right of expressive association. Specifically, the Amended Complaint asserts that "[t]he Conference has the constitutional rights to determine the values that it expresses, to disassociate from conduct that contradicts those values, and to enforce its Constitution and Bylaws that give effect to those values." ECF No. 5 at 44, ¶ 117. According to the SEC, "Defendants' ongoing and threatened conduct infringes those rights and therefore violates the First Amendment." *Id.* The particular alleged conduct the SEC identifies is LSU's "decisions to recruit professional athletes to LSU's football team and allow them to practice with the team, along with their announced plan to place them on LSU's official football roster." *Id.* at 44–45, ¶ 118; *see id.* at 45–46, ¶¶ 119, 120, 121 (same)

On the same day, the SEC filed its pending motion for preliminary relief demanding that this Court prohibit Defendants and persons acting in concert with them from "filing, prosecuting, or participating in lawsuits or otherwise seeking judicial intervention" concerning the SEC's asserted associational rights, and from "block[ing], delay[ing], enjoin[ing], revers[ing], or otherwise undermining" any decision to terminate LSU's membership at a scheduled September 10 meeting. ECF No. 6 at 2–3.

As the motion illustrates, the SEC grounded this suit in LSU's alleged failure to adhere to (or alleged undermining of) the terms and conditions of SEC's Constitution and Bylaws. *See id.* at 2, 3, 4, 6, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 27–28 (citing the SEC's Constitution and Bylaws). The SEC also identified the true source of some of its alleged harm—*the Louisiana state court's injunction against it* stating that "the SEC is enjoined from imposing penalties on LSU for its conduct." *Id.* at 18. And, perhaps most importantly, the SEC conceded that its alleged First Amendment associational harm arises *only* because the SEC refuses to "terminat[e] LSU's membership in the Conference." *Id.* at 19.

## ARGUMENT

### I. Dismissal Under Rule 12(b)(1) Is Warranted Because There Is No Article III Case or Controversy.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). Three jurisdictional defects here show that there is no case or controversy: (A) standing; (B) mootness/ripeness; and (C) sovereign immunity.

#### A. The SEC Has No Article III Standing.

A straightforward Article III standing analysis ends this case. To bring this case, the SEC "'must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). To do so, a

plaintiff "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id.* at 57 (quoting *Clapper*, 568 U.S. at 409). When, as here, a plaintiff seeks prospective relief, it must show a "substantial likelihood" of future injury that is not "conjectural, hypothetical, or contingent." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–47 (11th Cir. 1999) (citation omitted). And of course, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.

Those basic principles resolve this case from the jump. The only harm alleged in the Amended Complaint stems from a supposed "forced association" between the SEC and LSU. ECF No. 5 at 44, ¶ 116. But no one is *forcing* the SEC to associate with LSU. To the contrary, the SEC specifically pleads that the SEC possesses the power to unilaterally terminate LSU's conference membership. *Id.* at 2. And the SEC specifically argues that it *can* fully "exercise its First Amendment rights ... by terminating LSU's membership in the Conference." ECF No. 6 at 19.

Now, to be clear, that drastic step is not—and was never—warranted. But the availability of that step shows the contrived nature of this suit: The SEC membership *could* unilaterally disassociate itself from LSU today. The SEC cannot "manufacture" Article III standing, therefore, by insisting on associating with

LSU—and then claiming that the association hurts the SEC's alleged First Amendment rights. *Clapper*, 568 U.S. at 416.

The Supreme Court's First Amendment freedom-of-association cases illustrates SEC's misunderstanding of the law. "Freedom of association ... plainly presupposes a freedom not to associate." *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 680 (2010). Constitutionally cognizable harm thus arises in the freedom-of-association context when a law or regulation "[i]nsists that an organization embrace unwelcome members." *Id.* But that is not the case here. And it points up related traceability and redressability problems: The SEC's asserted First Amendment harm traces to the SEC membership's unilateral decision to incur that harm—and no judicial decision can save the SEC from itself.

One final point on standing and traceability: The SEC's pending motion gives away that a true source of its alleged harm is the Louisiana state court's injunction stating that "the SEC is enjoined from imposing penalties on LSU for its conduct." ECF No. 6 at 18. No Defendant is responsible for that alleged "injury that results from the independent action of some third party not before the court." *Murthy*, 603 U.S. at 57 (citation omitted). Accordingly, insofar as the state court injunction is the basis for this lawsuit, that confirms that the SEC lacks Article III standing to sue Defendants.

Article III standing easily disposes of this case.

### B. Alternatively, This Suit Is Moot and Unripe.

Even if the SEC had standing at the outset to bring this suit, mootness and ripeness doctrines would end the suit. That is because the alleged fears animating this suit have dissipated. While the Amended Complaint and motion for preliminary relief challenge LSU's alleged recruitment of "professional" athletes and potential rostering of such athletes on the LSU football team, that challenge is now moot. There is no dispute that the LSU football team's roster is full and closed for the 2026–27 football season—and the players in question were not rostered. Similarly, while the Amended Complaint and motion for preliminary relief challenge LSU's anticipated interference with a September 10 SEC meeting discussing LSU's termination, that meeting has come and gone—and no interference occurred.

This case is thus moot. "Mootness arises when an issue presented in a case is 'no longer live or the parties lack a legally cognizable interest in the outcome.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (internal quotation marks omitted). Where mootness arises, "dismissal is required because mootness is jurisdictional[.]" *Id.* (cleaned up). That is the case here: The core allegations comprising the Amended Complaint and pending motion are no longer live—so dismissal is in order. Nor does the "voluntary cessation" mootness exception apply. As an initial matter, "governmental entities and officials have ... considerably more leeway than private parties" in avoiding this exception.

*Id.* (citation omitted). That is especially so where, as here, the governmental actors "could not reasonably be expected" to resume the challenged conduct—the football roster is closed, and the September 10 meeting is done. *Id.* (citation omitted). Mootness thus ends the case.

The Court could reach the same conclusion through the ripeness lens. "When determining if a claim is ripe for judicial review, [a court] consider[s] both constitutional and prudential concerns." *Nat'l Advertising Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005). "In some circumstances, although a claim may satisfy constitutional requirements, prudential concerns 'counsel judicial restraint.'" *Id.* The proper inquiry "focuses on whether the claim presented is 'of sufficient concreteness to evidence a ripeness for review.'" *Id.* That "requires a two part 'determination of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Id.*

Neither prong is satisfied here. The core issues presented by the Amended Complaint and motion—the possibility that "professional" athletes could be rostered on the LSU football team and the possibility that LSU could "interfere" with the September 10 meeting—plainly are not fit for judicial review because they never materialized and never will materialize. For the same reason, the SEC will suffer no hardship from this Court declining to wade into an odd purported First Amendment

case where the facts on the ground are night-and-day different from the picture painted in the Amended Complaint and motion.

Ripeness principles thus end this case just as mootness does.

### C. This Suit Is Independently Barred by Sovereign Immunity.

Those threshold jurisdictional defects exist alongside a third—sovereign immunity—which bars this suit altogether. The Amended Complaint asserts claims against only state officials and only in their official capacities. Accordingly, this suit is barred by sovereign immunity unless some immunity exception applies.[1] *Lavina*, 174 F.4th at 52. The SEC never acknowledges the sovereign-immunity problem, but if it had, the SEC's best hope would be the *Ex parte Young* exception, which allows suits for prospective relief "against state officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce ... an unconstitutional act.'" *Id.*

But *Ex parte Young* is unavailable here. "[T]he Supreme Court has explained that *Ex parte Young* does not permit 'actions against state officers for specific performance of a contract to which the State was a party.'" *Id.* at 53 (citing *Edelman*,

[1] *See Raj v. Louisiana State University*, 714 F.3d 322, 328 (5th Cir. 2013) (LSU Board); *Harden v. Adams*, 760 F.2d 1158, 1163–64 (11th Cir. 1985) (University President); *Braswell v. Board of Regents of University System of Georgia*, 369 F. Supp. 2d 1371 (N.D. Ga. 2005) (Athletic Director); *Rollins v. Kiffin*, No. 3:23-CV-00356-MPM-RP, 2024 WL 386925, at *4 (N.D. Miss. Jan. 31, 2024) ("Kiffin in his official capacity enjoy[s] sovereign immunity"), *aff'd*, No. 24-60051, 2024 WL 4054379 (5th Cir. Sept. 5, 2024); *Okpalobi v. Foster*, 244 F.3d 405, 416–24 (5th Cir. 2001) (en banc) (Louisiana Attorney General).

415 U.S. at 666–67). "Consistent with [the Supreme Court's] precedents," the Eleventh Circuit has "likewise held that '*Ex parte Young* does not permit individual officers of a sovereign to be sued when the relief requested would, in effect, require the sovereign's specific performance of a contract.'" *Id.* Thus, where the requested relief "amounts to 'specific performance of a contract to which the State was a party'" and "would necessarily require the state ... to perform its obligations under the contract," "*Ex parte Young* does not permit that relief." *Id.*

That is the SEC's principal problem here: From top to bottom, the SEC's filings are grounded in LSU's alleged failure to adhere to—or alleged undermining of—*the SEC's Constitution and Bylaws*. *See, e.g.*, ECF No. 6 at 2, 3, 4, 6, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 27–28 (citing the SEC's Constitution and Bylaws). The avowed purpose of this suit is "to enforce [the SEC's] Constitution and Bylaws that give effect to [the SEC's] values." ECF No. 5 at 44, ¶ 117. Put otherwise, the SEC seeks to enlist this Court's assistance in coercing LSU to "perform its obligations under the [SEC] contract." *Lavina*, 174 F.4th at 53. "*Ex parte Young* does not permit that relief." *Id.*

Notably, even if *Ex parte Young* were otherwise applicable, it would make no sense in this context. Under traditional *Ex parte Young* principles, "unless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate." *Summit Med. Assocs., P.C. v. Pryor*,

180 F.3d 1326, 1341 (11th Cir. 1999). "Only if a state officer has the authority to enforce an unconstitutional act in the name of the state" may *Ex parte Young* strip the officer of sovereign immunity. *Id.* Here, however, no Defendant has any legal authority to effectuate the alleged unconstitutional act at issue—the SEC's association with LSU. No Defendant controls the SEC's membership or termination votes; the SEC alone does. The SEC thus could not latch onto *Ex parte Young* even if it were available.

Because this suit is squarely foreclosed by Eleventh Circuit and Supreme Court precedent, the Court should dismiss on that independent jurisdictional basis.

## II. Dismissal Under Rule 12(b)(2) and Rule 12(b)(3) Is Warranted Because This Court Lacks Personal Jurisdiction Over Defendants and Venue Is Improper.

Dismissal is likewise warranted because this Court lacks personal jurisdiction over Defendants and venue is improper.

A. The SEC appears (ECF No. 5 at 10–11, ¶ 26) to concede that, of course, there is no general personal jurisdiction over Defendants. And SEC's attempts to show specific jurisdiction fundamentally misapprehends the law. There is no specific jurisdiction over Defendants.

To assess specific jurisdiction, the Court *first* asks "whether a plaintiff's claims, 'arise out of or relate to' at least one of the defendant's contacts with the forum" state; *second* "evaluate[s] whether the defendant purposefully availed

himself of the privilege of conducting activities within the forum state"; and *third* "assess[es] whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (5th Cir. 2023) (cleaned up). No prong is satisfied here.

*First*, the Amended Complaint identifies no Alabama contact by a Defendant that this suit either arises out of or relates to. "The principal way to establish this relationship is through an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* But the Amended Complaint identifies nothing.

The Amended Complaint principally rests on claims that "LSU" has sufficient contacts with Alabama by virtue of its membership in the SEC. ECF No. 5 at 10–11, ¶ 26. But LSU is not a defendant—the SEC specifically filed the Amended Complaint to *delete* LSU as a defendant. *Compare* ECF No. 1 (original), *with* ECF No. 5 (amended). LSU's alleged contacts thus are irrelevant because they are not "one of the defendant's contacts with the forum state." *SkyHop Techs., Inc.*, 58 F.4th at 1229 (cleaned up). That is important because the Amended Complaint concludes without any citation of relevant precedent that personal jurisdiction over LSU constitutes personal jurisdiction of "LSU-affiliated Defendants in their official capacities." ECF No. 5 at 11, ¶ 27.

That is not how the law works. While Defendants' official-capacity status may dictate the nature of their liability, it does not affect the *in personam* jurisdictional question whether Defendants have sufficient forum contacts to be hailed into Alabama courts. Indeed, it is only that *Ex parte Young* fiction—that individual Defendants are not the State—that could sustain this action (which it does not, *see supra*).

And that betrays the fundamental flaw in the Amended Complaint: It does not even try to claim that any Board of Supervisors Defendant has an Alabama contact. That dooms personal jurisdiction as to those 16 Defendants.

The Amended Complaint also concedes that Defendant Liz Murrill, the Louisiana Attorney General, has no Alabama contact. Instead, the most the Amended Complaint offers is that Attorney General Murrill "filed an amicus brief" in the Louisiana state court proceeding that was "expressly aimed at the SEC and at this District"—and that she called this lawsuit "legal garbage." ECF No. 5 at 13, 31. Respectfully, that this Court plainly lacks personal jurisdiction is one reason *why* she characterized the suit as "legal garbage." It would turn due process on its head to say that a fair reaction to a frivolous claim of personal jurisdiction itself establishes personal jurisdiction.

That leaves only LSU President Rousse, LSU Athletics Director Ausberry, and LSU Football Coach Kiffin who allegedly attended and attend "in-person

meetings in this District." *Id.* at 11. Those are forum contacts—but this lawsuit does not arise out of or relate to those contacts. The litigation in Louisiana state court (including the SEC Commissioner's participation in that litigation), the alleged use and potential rostering of "professional" athletes, the cited public statements by Defendants, and the like all occurred in Louisiana. Indeed, the closest relevant contact—President Rousse's vote in Alabama *for* the SEC's preferred policy statement, ECF No. 5 at 21–22, ¶¶ 59–61—plainly does not give rise or relate to a claim that the SEC is being forced to associate with the *opposite* message. In no sense is there "a strong 'relationship among the defendant[s], [Alabama], and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021); *cf. Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("[T]he effects of petitioner's conduct on respondents are not connected to the forum State in a way that makes those effects a proper basis for jurisdiction.").

*Second*, for similar reasons, there is no serious claim that these Defendants "purposefully availed [themselves] of the benefit of [Alabama's] laws." *SkyHop Techs., Inc.*, 58 F.4th at 1230. According to the Amended Complaint, they merely attended meetings in Alabama—they conducted no commercial business or any other activities invoking Alabama law. *Cf. Walden*, 571 U.S. at 285 (citing, as an example, "defendants who have purposefully 'reach[ed] out beyond' their State and

into another by ... entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State, or by circulating magazines to 'deliberately exploi[t]' a market in the forum State" (citations omitted)). And nothing in the SEC Constitution and Bylaws even invoke Alabama law or a federal forum.

*Third*, in all events, exercising personal jurisdiction over these Defendants would violate "traditional notions of fair play and substantial justice." *SkyHop Techs., Inc.*, 58 F.4th at 1231. To run this analysis, the Eleventh Circuit ordinarily consider[s] four factors to resolve this inquiry: 'the burden on the defendant'; 'the forum's interest in adjudicating the dispute'; 'the plaintiff's interest in obtaining convenient and effective relief'; and 'the judicial system's interest in resolving the dispute.'" *Id.* None of those factors is satisfied here.

The burden on Defendants—who have virtually nothing to do with this District—is self-explanatory: They are all in Louisiana, and Louisiana is the forum that plainly has the weightiest interest in adjudicating this dispute (if it persists). The SEC cannot plausibly claim that litigating this suit in parallel in Alabama is convenient when the SEC already is in Louisiana litigating the very state court litigation it seeks to collaterally attack here. And the judicial system should not tolerate the sort of gamesmanship that tries to haul Louisiana state officials in their official capacities before an Alabama court.

Basic due principles thus reinforce that the Court should dismiss the Amended Complaint and deny the pending motion.

B. For the same reasons this Court lacks personal jurisdiction, venue also is improper. The Amended Complaint claims venue under 28 U.S.C. § 1391(b)(2) "because a substantial part of the events or omissions giving rise to the SEC's claims occurred in this District." ECF No. 5 at 10, ¶ 25. But under § 1391(b)(2), "[o]nly the events that directly give rise to a claim are relevant" and courts must "focus on relevant activities of the defendant, not of the plaintiff." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003) (citation omitted). As detailed above, the conduct the SEC challenges (recruiting, practices, public statements, the Attorney General's amicus brief, the *Pyburn* litigation, and everything else) uniformly occurred in Louisiana—namely, in the Middle District of Louisiana. At a minimum, therefore, dismissal or a transfer to the Middle District of Louisiana is warranted under 28 U.S.C. § 1406(a).

**III. Dismissal Under Rule 12(b)(6) Is Warranted Because the Amended Complaint Fails to State a Claim for Relief.**

If the Court were to reach the merits, the merits are extraordinarily straightforward: The SEC fails to state a claim. Count I of the Amended Complaint asserts a First Amendment freedom-of-association claim against Defendants. (Count II simply adds a demand for preliminary relief based on the same arguments. Accordingly, the arguments with respect to Count I apply equally to Count II.) The

theory in this Count is that Defendants are unconstitutionally "forc[ing] an athletic conference to associate its competitions with conduct antithetical to the conference's expressed values." ECF No. 5 at 44, ¶ 116. That claim is meritless in at least five independent respects.

*First*, the United States has taken the position in other litigation that states have no First Amendment rights. *See* Br. for Pet'rs 22 & n.1, *Murthy v. Missouri*, No. 23-411 (U.S. Dec. 19, 2023); *cf. Missouri v. Biden*, 83 F.4th 350, 372 (5th Cir. 2023), *reversed by Murthy*, 603 U.S. 43 ("Perhaps [the state's right to speak] derives from a state's sovereign nature, rather than from the First Amendment itself."). If that is so, then the freedom-of-association doctrine—which is premised on the notion of associating to engage in First Amendment-protected expression—likewise cannot be invoked by a state.

That matters here because 15 of 16 members of the SEC are sovereign state entities. If states have no First Amendment rights, however, then the SEC's freedom-of-association theory would boil down to the claim of an association-of-one (Vanderbilt University) who allegedly wishes to engage in expressive conduct. By definition, that is not a viable freedom-of-association claim.

*Second,* and in all events, the SEC is not an expressive association entitled to claim First Amendment protection. "Freedom of association is a fundamental right that encompasses two forms, namely 'intimate association'"—meaning certain

intimate human relationships, which the SEC does not invoke—"and 'expressive association.'" *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1338 (11th Cir. 2002). Expressive association "is the 'right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for redress of grievances, and the exercise of religion.'" *Id.* (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984)).

But the SEC is no such expressive association, as it was not organized for any of those core First Amendment activities. The SEC instead exists principally to organize athletic competitions, establish eligibility rules, enter media agreements, and distribute the resulting revenues among its members—not engage in expressive conduct. *See* ECF No. 5 at 10–17, ¶¶ 25–26, 36–42.

The best evidence of this: The SEC's sole argument for the proposition that "[t]he SEC is an expressive association" is that the SEC has "expressed its view" on the underlying subject matter of this litigation—"that professional athletes should not be permitted to return to college competition and that the integrity of college athletics depends on maintaining the distinction between college and professional sports." ECF No. 5 at 43, ¶ 113. As the SEC admits, that is just a regurgitation of the SEC's "Constitution and Bylaws," "governance actions," "public statements," and "communications" intended to govern the SEC members' operations. *Id.* Having (alleged) rules of operation does not magically transform an organization into an

expressive association. *Cf. Roberts*, 468 U.S. at 634–36 (O'Connor, J., concurring in part and concurring in the judgment) ("[T]here is only minimal constitutional protection of the freedom of commercial association[.]").

*Third*, as previewed above, the SEC has pleaded itself out of a freedom-of-association claim. Freedom of association for First Amendment purposes "'plainly presupposes a freedom not to associate.'" *Martinez*, 561 U.S. at 680 (quoting *Roberts*, 468 U.S. at 623). As a result, "[i]nsisting that an organization embrace unwelcome members ... 'directly and immediately affects associational rights.'" *Id.* And that is the through line in the freedom-of-association cases: "laws and regulations that constrain associational freedom." *Id.*

In this case, however, the SEC has expressly pleaded that *the SEC* is the source of the supposed injury to the SEC's freedom not to associate. Specifically, the SEC has asserted that it possesses the unilateral authority to "involuntarily" terminate LSU from SEC membership. *E.g.*, ECF No. 5 at 2–3. Indeed, the SEC has gone as far as to say that it may fully exercise its First Amendment rights "by terminating LSU's membership in the conference." ECF No. 6 at 19. The SEC simply has not done so. Unlike in cases like *Martinez*, therefore, this is not a case where a plaintiff complains of being forced by an external party to associate with an unwelcome member—*this plaintiff itself is maintaining the association*. *Cf.* 561 U.S. at 681 ("The expressive-association precedents ... involved regulations that *compelled* a

group to include unwanted members, with no choice to opt out.”). That guts any freedom-of-association theory because the First Amendment prohibits only a government actor from infringing the freedom to associate, not an organization’s own willful association with the member in question.

*Fourth*, and relatedly, the compulsion and pressure critical to freedom-of-association claims clearly do not exist here. No Defendant is alleged to have compelled or pressured the SEC into maintaining LSU’s conference membership. Indeed, the very concept is laughable for Defendants such as the Attorney General. More still, attempting to *muzzle* Defendants like the Attorney General would itself violate the First Amendment. Under our Constitution, “[a] government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead.” *Nat’l Rifle Ass’n of Am. v. Vullo*, 602 U.S. 175, 188 (2024). What crosses the constitutional line is “us[ing] the power of the State to punish or suppress disfavored expression.” *Id.* But no such conduct is alleged to exist here.

*Fifth*, even setting aside all of the above, the SEC’s freedom-of-association claim could work only if the SEC showed that “the presence of [LSU] affects in a significant way the [SEC’s] ability to advocate public or private viewpoints.” *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). But the Amended Complaint offers no allegations on that score. The SEC is just as free today to advance its views on

"professional" athletes as it was yesterday. It may issue policy statements, defend its rules, criticize LSU, and tell anyone who will listen that LSU's positions are inconsistent with its own. LSU's mere membership in the SEC does not come close to affecting such expression "in a significant way." *Id*.

For all of these reasons, the SEC fails to state a claim on the merits, which independently warrants dismissal of the Amended Complaint.

## IV. Denial of the Motion for Preliminary Relief Is Warranted for Materially Identical Reasons.

Dismissal on any of the above grounds will moot the SEC's pending motion for preliminary relief. That is because dismissal necessarily would establish that the SEC is unlikely to succeed on the merits—either for jurisdictional reasons or on the merits. The same reasons would establish that the equities and public interest squarely tilt against issuing preliminary relief: The SEC stands to suffer no irreparable harm from claimed injuries that never materialized, and the public interest is in laying this misguided litigation to rest.

Defendants here add only one final point about this lawsuit and the requested injunction. Ongoing proceedings in Louisiana state court—not LSU—appear to be the true cause of the SEC's displeasure. *See* ECF No. 6 at 18. It is thus difficult to see this lawsuit as anything other than a collateral attack on those proceedings.

That is an affront to the comity and respect on which our federalism rests. The Eleventh Circuit has rejected the sort of "preemptive strike" to which the SEC has

resorted in an effort to stave off liability in a state court suit. *McKusick v. City of Melbourne*, 96 F.3d 478, 489 (11th Cir. 1996). For good reason: "[I]nstitutional interests of federalism and comity" forbid such interference with state-court proceedings. *Id.* Those interests, moreover, are preserved through the Anti-Injunction Act, 28 U.S.C. § 2283, which generally forbids federal-court injunctions against state-court proceedings. The SEC implies (ECF No. 6 at 3031) that *Mitchum v. Foster*, 407 U.S. 225 (1972), allows this Court to enjoin state-court proceedings simply because this is a 1983 action. That is not accurate. *Mitchum* expressly did "not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." 407 U.S. at 243. And those principles are controlling here given the absence of any case or controversy, and the absence of any meritorious claim for relief.

For the sake of completeness, Defendants must add that the SEC's request for an injunction barring both state officials and private litigants from filing or prosecuting hypothetical future lawsuits is blatantly illegal. At least some, if not all, of those individuals have First Amendment rights and Due Process rights that cannot be summarily abridged by a federal court injunction. The request is not serious.

## CONCLUSION

The pending motion for preliminary relief should be denied, and this case should be dismissed.

Dated: September 25, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

/s/ Zachary Faircloth
ZACHARY FAIRCLOTH (LA 39875)*
Principal Deputy Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 421-4088
Facsimile: (225) 326-6795
FairclothZ@ag.louisiana.gov

Taylor, Porter, Brooks & Phillips L.L.P.
Robert W. Barton, Louisiana Bar #22936*
450 Laurel Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 387-3221
Facsimile: (225) 346-8049
Email: bob.barton@taylorporter.com

Bruce F. Rogers
BAINBRIDGE MIMS ROGERS & SMITH, LLP
600 Luckie Drive
Suite 415
Birmingham, Alabama 35223
Telephone 205-879-1100
Facsimile 205-879-4300
Email: brogers@bainbridgemims.com

*Counsel for Defendants*

**Admitted pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 25th day of September, 2026.

*/s/ Zachary Faircloth*
Zachary Faircloth