FILED
2026 Oct-13 PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| SOUTHEASTERN CONFERENCE,<br><br>Plaintiff,<br><br>v.<br><br>WADE ROUSSE, in his official capacity as President of Louisiana State University, *et al.*,<br><br>Defendants. | ) | Case No.: 2:26-cv-01586-ACA |

# PLAINTIFF SOUTHEASTERN CONFERENCE'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. The SEC Has Standing. ........ 3

B. The SEC's Claims Are Not Moot. ........ 6

C. The SEC's Claims Are Ripe For Adjudication. ........ 10

D. Sovereign Immunity Does Not Bar the SEC's Claims. ........ 11

E. This Court Has Personal Jurisdiction over Defendants. ........ 12

1. Defendants Have Contacts with Alabama that Relate to this Lawsuit. ........ 13

2. Defendants Have Purposefully Availed Themselves of Alabama. ........ 17

3. The Exercise of Jurisdiction over Defendants in this Case Comports with Fair Play and Substantial Justice. ........ 19

F. Venue Is Proper in this District. ........ 21

G. The Amended Complaint States Valid First Amendment Claims. ........ 25

H. While No Preliminary Relief Is Currently Needed, Nothing Prevents this Court from Granting Such Relief at the Appropriate Time. ........ 30

III. CONCLUSION ........ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFC Franchising, LLC v. Prac. Velocity, LLC*,
No. 2:15-CV-02150-SGC, 2016 WL 6024438 (N.D. Ala. Oct. 14, 2016) ....22

*Asgeirsson v. Abbott*,
773 F. Supp. 2d 684 (W.D. Tex. 2011), *aff'd*, 696 F.3d 454 (5th Cir. 2012) ....22

*Ass'n for Molecular Pathology v. U.S. Pat. & Trademark Off.*,
669 F. Supp. 2d 365 (S.D.N.Y. 2009), *aff'd in part, rev'd in part on other grounds*, 653 F.3d 1329 (Fed. Cir. 2011), *aff'd in part, rev'd in part on other grounds*, 569 U.S. 576 (2013) ....14

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000) ....28, 29, 30

*Calder v. Jones*,
465 U.S. 783 (1984) ....16

*Clapper v. Amnesty International USA*,
568 U.S. 398 (2013) ....5

*Davis v. Fed. Election Comm'n*,
554 U.S. 724, (2008) ....6

*Del Valle v. Trivago GMBH*,
56 F.4th 1265 (11th Cir. 2022) ....19, 20

*FBI v. Fikre*,
601 U.S. 234 (2024) ....9

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ....15, 20

*Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc.*,
956 F. Supp. 2d 1323 (M.D. Ala. 2012) ....21

*Great W. United Corp. v. Kidwell*,
577 F.2d 1256 (5th Cir. 1978), *rev'd on other grounds sub nom. Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979) ....................................14

*Hamilton v. Southland Christian Sch., Inc.*,
680 F.3d 1316 (11th Cir. 2012) ....................................26

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995)....................................29, 30

*Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*,
140 F.4th 1304 (11th Cir. 2025) ....................................17, 19

*Jenkins Brick Co. v. Bremer*,
321 F.3d 1366 (11th Cir. 2003) ....................................24

*Kalman v. Cortes*,
646 F. Supp. 2d 738 (E.D. Pa. 2009)....................................22

*Kentucky v. Graham*,
473 U.S. 159 (1985)....................................14

*Keohane v. Fla. Dep't of Corr. Sec'y*,
952 F.3d 1257 (11th Cir. 2020) ....................................9

*League of Women Voters of Fla. v. Browning*,
No. 08-21243-CIV, 2008 WL 11332046 (S.D. Fla. May 29, 2008) ..................22

*Licciardello v. Lovelady*,
544 F.3d 1280 (11th Cir. 2008) ....................................16

*Louis Vuitton Malletier, S.A. v. Mosseri*,
736 F.3d 1339 (11th Cir. 2013) ....................................19

*McGee v. Int'l Life Ins. Co.*,
355 U.S. 220 (1957)....................................19

*McKusick v. City of Melbourne*,
96 F.3d 478 (11th Cir. 1996) ....................................31

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025)....................................23

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....5

*Mitchum v. Foster*,
407 U.S. 225 (1972)....30

*Morgan v. N. Miss. Med. Ctr., Inc.*,
403 F. Supp. 2d 1115 (S.D. Ala. 2005)....25

*Morton v. Pa. State Univ. Bd. of Trs.*,
No. 7:25-CV-1812-ACA, 2026 WL 1165561 (N.D. Ala. Apr. 29, 2026)....12, 13, 17, 19

*Murthy v. Missouri*,
603 U.S. 43 (2024)....26

*Nat'l Advert. Co. v. City of Miami*,
402 F.3d 1335 (11th Cir. 2005)....10

*National Rifle Ass'n of America v. Vullo*,
602 U.S. 175 (2024)....29

*PTI, Inc. v. Philip Morris Inc.*,
100 F. Supp. 2d 1179 (C.D. Cal. 2000)....14

*Rosebud Sioux Tribe v. Trump*,
428 F. Supp. 3d 282 (D. Mont. 2019)....22

*Serv. Women's Action Network v. Mattis*,
320 F. Supp. 3d 1082 (N.D. Cal. 2018)....22

*SkyHop Techs., Inc. v. Narra*,
58 F.4th 1211 (11th Cir. 2023)....15, 16, 18, 19

*Sterling v. Provident Life & Acc. Ins. Co.*,
519 F. Supp. 2d 1195 (M.D. Fla. 2007)....24

*United States v. Concentrated Phosphate Exp. Ass'n*,
393 U.S. 199 (1968)....8

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009)....13

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002) .......... 11

*Weidley v. Aaniiih Nakoda Finance LLC*,
787 F. Supp. 3d 1255 (N.D. Ala. 2025) .......... 13, 14

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) .......... 14

*Woodke v. Dahm*,
70 F.3d 983 (8th Cir. 1995) .......... 24

*Ex parte Young*,
209 U.S. 123 (1908) .......... 11, 12, 14

*Ziegler v. Indian River Cnty.*,
64 F.3d 470 (9th Cir. 1995) .......... 16

**Statutes**

28 U.S.C. § 1391(b)(2) .......... 21, 22, 24

28 U.S.C. § 1406(a) .......... 25

42 U.S.C. § 1983 .......... 16, 30, 31

**Other Authorities**

Alex Scarborough, *LSU's Will Wade 'going for it,' despite player eligibility concerns*, ESPN (Sept. 23, 2026, 5:41 PM) https://www.espn.com/mens-college-basketball/story/_/id/50015860/lsu-wade-going-player-eligibility-concerns .......... 2, 7

U.S. CONST. amend. I .......... *passim*

Fed. R. Civ. P. 12(b)(2) .......... 13

17 James Wm. Moore et al., *Moore's Federal Practice* § 110.04[2] (3d ed.) .......... 21

14D Richard D. Freer, *Federal Practice and Procedure* § 3806 n.21 (4th ed.) .......... 22

14D Richard D. Freer, *Federal Practice and Procedure* § 3827 (4th ed.)....................................................................................................25

# I. INTRODUCTION

Defendants seek to dismiss a lawsuit the Southeastern Conference did not file. According to them, this case is about two football players and one meeting of the Conference's Presidents and Chancellors on September 10, 2026. They say there is nothing left to litigate now that those players have been left off LSU's roster and the meeting has passed without incident. But those arguments do not end the case that is actually before this Court.

This case addresses a broader dispute: Defendants' complete lack of institutional control over LSU's athletic programs, their ongoing defiance of the Conference's Professionalism Rules, and the very real threat—reiterated in Defendants' briefing—that Defendants will interfere with any effort to terminate LSU's membership in the Conference. *See* ECF No. 5 ¶¶ 39–40, 79(d), 81–82, 92. That dispute remains live.

LSU's eleventh-hour decision not to include two former professional athletes on its football roster does not moot the SEC's claims. Nor does it matter that Defendants did not block or interfere with the September 10th meeting. That meeting never represented the outer boundary of the relief sought through this lawsuit, which seeks to prevent Defendants' interference with the Conference's exercise of its First Amendment right of expressive association, including its right to disassociate from LSU.

Defendants' threatened interference with the SEC's First Amendment freedoms is ongoing. It is notable that Defendants never say in their brief that LSU is committed to following the Professionalism Rules, maintaining institutional control, or not interfering with the SEC's First Amendment right of expressive association going forward. Any such claim would ring hollow anyway, because LSU continues to flout those Rules and principles. LSU has openly recruited former NBA player RJ Luis Jr., has allowed him to practice with LSU's men's basketball team, and has refused to publicly and definitively state that he will not be included on LSU's basketball roster, which is not due for several more weeks. LSU has also recruited international professional basketball players whose eligibility remains in question. LSU's head men's basketball coach has been candid about LSU's strategy: "We're going to be unapologetic about it. This is who we are. This is what we're doing. This is the path that we charted. We're going to go down it, and that's fine."[1]

Defendants concede, as they must, that the SEC's Constitution and Bylaws give it the right to terminate LSU's membership in the Conference. *See* ECF No. 27-1 at 8 ("The SEC membership *could* unilaterally disassociate itself from LSU today." (emphasis in original)); *id.* at 14 ("No Defendant controls the SEC's membership or termination votes; the SEC alone does."). What Defendants do not

---

[1] Alex Scarborough, *LSU's Will Wade 'going for it,' despite player eligibility concerns*, ESPN (Sept. 23, 2026, 5:41 PM) https://www.espn.com/mens-college-basketball/story/_/id/50015860/lsu-wade-going-player-eligibility-concerns.

say in their brief—much less through any sworn affidavit or declaration—is that they will refrain from interfering with the SEC's exercise of its undisputed right to terminate LSU's membership in the Conference. Indeed, they suggest the opposite, insisting that termination "is not—and was never—warranted." *Id.* at 8. That is not the language of an institution prepared to accept the consequences of its stubborn refusal to follow rules fundamental to the Conference's purpose and mission. It is the statement of an institution preserving its ability to obstruct any effort by the SEC to disassociate—the very obstruction that this lawsuit seeks to prevent.

Defendants are trying to have it both ways. They ask the Court to find that no live dispute exists, while keeping the door wide open for LSU to continue defying the Professionalism Rules and violating principles of institutional control without risking the termination of its Conference membership. None of Defendants' arguments support that outcome.

## II. ARGUMENT

### A. The SEC Has Standing.

Defendants' standing argument rests on two premises: (1) any injury from the SEC's continued association with LSU is "self-inflicted" because the Conference can, but has thus far chosen not to, expel LSU, and (2) any injury flowing from the Louisiana state-court injunction in *Pyburn* is not traceable to Defendants. ECF No. 27-1 at 1, 7–9. Both premises are wrong.

Defendants argue that "no one is forcing the SEC to associate with LSU." *Id.* at 8 (emphasis omitted). That framing assumes away the primary reason that the SEC filed this action: the concrete threat that Defendants will interfere with any effort by the Conference to disassociate from LSU by terminating its membership. The SEC seeks relief preventing Defendants from "blocking, delaying, enjoining, or otherwise preventing, including through court action or proceedings" the SEC's consideration of whether to terminate LSU's membership in the Conference, as well as any decision to do so. ECF No. 5 ¶¶ 135(c)–(d).

That threat is not hypothetical. Defendants have already shown they will use Louisiana's courts to stop the Conference from governing itself. Working hand in glove with the *Pyburn* plaintiffs, they helped obtain state-court orders that bar the Conference from enforcing the Professionalism Rules. The Louisiana Attorney General, acting in her official capacity, filed an amicus brief supporting the *Pyburn* plaintiffs and sat at their counsel table during the preliminary-injunction hearing. *Id.* ¶ 75. She then announced publicly that those plaintiffs must be able to rely on a court's decision "without fear of reprisal in the future." *Id.* ¶ 75(b). By "reprisal," she plainly meant the SEC's enforcement of its own rules.

Under Defendants' view of the standing doctrine, the SEC must terminate LSU's membership now, and if it does not, Defendants get free rein to obstruct any future attempt to do so. They cite no authority for the proposition that a party

threatened with interference in the exercise of a constitutional right must first attempt to exercise that right—and invite interference with that effort—before it can seek relief. And the law says the opposite. A plaintiff facing a credible threat of interference with its rights need not "bet the farm" before seeking a declaration to protect those rights. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (citation omitted).

Defendants' reliance on *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), is misplaced. They argue that the SEC lacks standing because LSU could be expelled from the Conference and any harm flowing from the SEC's association with LSU is therefore self-inflicted. ECF No. 27-1 at 8. But *Clapper* supports the SEC, not Defendants. It held that plaintiffs cannot manufacture standing by merely inflicting harm on themselves "based on their fears of hypothetical future harm that is not certainly impending." 568 U.S. at 416 (citation omitted). The harm here is not hypothetical. Defendants have already taken steps to interfere with Conference governance through their coordination with the *Pyburn* plaintiffs, and there is an imminent risk they will do so again absent intervention by this Court.

Defendants' traceability argument fares no better. They argue that any harm flowing from the *Pyburn* injunction results from "the independent action of some third party not before the court." ECF No. 27-1 at 9 (citation omitted). But *Pyburn* was not the result of "independent action" of some third party. Defendants

coordinated closely with the *Pyburn* plaintiffs and actively supported litigation that impaired the Conference's ability to govern its members and enforce the Professionalism Rules that are core to the Conference's expressive identity. ECF No. 5 ¶¶ 34–35, 67(c), 75, 77, 79(c).

The SEC faces an imminent threat that Defendants will interfere with its efforts to disassociate from LSU, a threat that can be addressed through an order from this Court. The SEC has standing. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (standing requires only "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling").

**B. The SEC's Claims Are Not Moot.**

Defendants claim that this case no longer presents a live controversy because LSU did not roster two football players and did not interfere with the September 10th meeting of the SEC's Presidents and Chancellors. Neither of those events mooted the SEC's claims.

LSU's dalliance with two professional football players is emblematic of its defiance of the Professionalism Rules and Defendants' lack of institutional control over LSU's athletics programs, but it does not define the scope of this dispute as Defendants suggest. The Amended Complaint makes clear that forced association with LSU would violate the Conference's First Amendment rights "whether or not

LSU ever includes Harris, Wright, or other football players who are ineligible under the Professionalism Rules on its football team roster." ECF No. 5 ¶ 81; *see also id.* ¶ 82 (noting "LSU's demonstrated lack of institutional control at the University level—including complete lack of control over Defendant Kiffin's actions").

LSU's last-minute decision not to roster two specific players does not cure the lack of institutional control the Amended Complaint describes. It confirms it. LSU allowed its head football coach to recruit former professional players, include them in team practices, hold roster spots open for them, and support their lawsuit challenging the Conference's Professionalism Rules, all after LSU's own President voted to reaffirm those Rules. *Id.* ¶¶ 7, 61. Defendants' argument that they mooted this case by deciding, at last, not to roster the players is like saying that someone caught with his hand in the cookie jar has cured the problem by pulling it out. What's more, Defendants still have their hands in the jar. LSU's men's basketball program continues to defy the Professionalism Rules and its head coach promises to be "unapologetic about it." Scarborough, *supra* note 1.

Nor does it matter that Defendants did not interfere with the September 10th meeting. The relief sought by the SEC was never limited to that meeting. Again, the Amended Complaint makes that point clear. The SEC seeks to enjoin Defendants from blocking, delaying, or interfering with its consideration of LSU's membership in the Conference "at the September 10 Special Meeting, any

adjournment thereof, *or otherwise*." ECF No. 6, Mem. in support of Mot. for TRO and PI at 36 (emphasis added); *see also* ECF No. 5 ¶ 135(c).

Defendants' own brief confirms the ongoing risk that they will interfere with any consideration of terminating LSU's membership in the Conference. Their insistence that termination "is not—and was never—warranted," ECF No. 27-1 at 8, is not the language of a party that recognizes the Conference's authority to disassociate, much less one that would honor that lawful decision. To the contrary, it forecasts exactly the kind of interference this lawsuit seeks to prevent and belies Defendants' claim that "the alleged fears animating this suit have dissipated." ECF No. 27-1 at 10.

Accepting Defendants' mootness argument would also have the perverse effect of penalizing the Conference for showing restraint in its dealings with LSU. After filing this action, the Conference deliberately refrained from calling a termination vote while it explored whether the parties' differences could be resolved. A rule that treats such restraint as a concession of mootness would punish parties for seeking resolution and reward those who exploit it.

The voluntary-cessation doctrine exists to prevent exactly that kind of gamesmanship and applies squarely here. A defendant's "voluntary cessation of allegedly illegal conduct does not moot a case." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). When, as here, a defendant claims

that it has mooted a case by stopping the challenged conduct, it "bears the . . . burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (citation omitted).

That is a "formidable burden," *FBI v. Fikre*, 601 U.S. 234, 241 (2024), and one that Defendants have not met. The question "is not whether a defendant repudiates its past actions, but what [that] repudiation can prove about its future conduct." *Id.* at 244. Defendants have offered no proof at all about their future conduct. They have submitted no declaration, sworn or otherwise, and their brief makes no commitment that LSU will comply with the Professionalism Rules or refrain from obstructing a future termination vote. That silence cannot carry Defendants' burden, particularly when coupled with LSU's ongoing defiance of the Professionalism Rules in connection with its men's basketball team.

Defendants invoke *Keohane* for the proposition that governmental defendants enjoy "considerably more leeway" in the voluntary-cessation analysis. ECF No 27-1 at 10–11. But that leeway does not excuse a governmental defendant from showing that it has actually changed course. In *Keohane*, the Florida Department of Corrections formally repealed and replaced the challenged policy. 952 F.3d at 1263. Defendants have done nothing of the sort. They have repealed no policy, made no commitment, and offered no assurance (formal or otherwise) that they will not

obstruct or interfere with consideration of LSU's termination from the Conference. They instead remain steadfast in their position that none of LSU's actions to date warrant termination of its Conference membership and unabashed in their ongoing, public defiance of rules and principles fundamental to the Conference's mission.

The SEC's claims have not been mooted.

### C. The SEC's Claims Are Ripe For Adjudication.

Defendants' ripeness argument repeats their mootness argument and fails for the same reasons. Defendants also argue that the SEC will suffer no hardship if the Court stops this case from going forward. That is plainly wrong. Without a ruling, the Conference must choose between two options. It can tolerate continued association with ongoing conduct that it has unanimously repudiated, or it can take steps to exercise its right to terminate LSU's membership and take on the imminent risk that Defendants will seek to block that decision in a forum that has already restrained the Conference's enforcement of its own rules. Ripeness doctrine does not require a party to put itself in that position before seeking relief, particularly in cases implicating a plaintiff's First Amendment rights. *See Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) (ripeness doctrine "is at its most permissive in cases concerning putative violations of the First Amendment" (citation omitted)).

### D. <u>Sovereign Immunity Does Not Bar the SEC's Claims.</u>

The SEC has sued state officials in their official capacities to obtain prospective relief from ongoing and threatened violations of the Conference's First Amendment rights. This is a textbook application of *Ex parte Young*, 209 U.S. 123 (1908). *See, e.g.*, *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (*Ex parte Young* defeats sovereign immunity where the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" (citation omitted)).

Defendants argue that *Ex parte Young* does not apply because the SEC is seeking specific performance of a contract in the form of its Constitution and Bylaws. ECF No. 27-1 at 12–14. The premise of that argument is wrong. Even if the SEC's Constitution and Bylaws could be considered a contract as Defendants suggest, the SEC is not asking this Court to enforce any provision of that contract. The SEC Constitution and Bylaws are the backdrop for the dispute, but the relief sought is prospective injunctive relief to protect the Conference's First Amendment rights, not an order requiring LSU to "perform" any contractual obligation. And the source of the right that the SEC seeks to protect is the First Amendment, not any Conference rule or bylaw.

Said differently, the SEC is not asking this Court to require Defendants to follow the rules. It is asking the Court to protect the Conference's right to disassociate from LSU because of its refusal to follow the rules.

Defendants' fallback argument on sovereign immunity fares no better. They argue that *Ex parte Young* is inapplicable because they lack legal authority "to effectuate the alleged unconstitutional act at issue—the SEC's association with LSU." ECF No. 27-1 at 14. That argument ignores the relief that the Conference actually seeks: an order prohibiting Defendants from interfering with its right to disassociate. LSU's Board, President, and Athletics Director control how LSU responds to a termination vote, including whether LSU goes to court to block it, and the Attorney General has already used her office to support litigation against the Conference. *See* ECF No. 5 ¶¶ 15–17, 19–21, 34–35, 75. There is no question that Defendants can cause such interference—they have already done so in *Pyburn*. The sovereign immunity exception set out in *Ex parte Young* applies fully here.

**E. <u>This Court Has Personal Jurisdiction over Defendants.</u>**

Defendants fare no better on their argument that this Court lacks personal jurisdiction over them. Because Defendants did not submit any evidence in support of their motion, the SEC need only make a prima facie showing of personal jurisdiction. *See Morton v. Pa. State Univ. Bd. of Trs.*, No. 7:25-CV-1812-ACA, 2026 WL 1165561, at *1 (N.D. Ala. Apr. 29, 2026) (a "plaintiff defending against a

pretrial Rule 12(b)(2) motion to dismiss" must allege "sufficient facts to make out a prima facie case of jurisdiction" (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009))). The SEC more than satisfies that minimal burden.

The type of personal jurisdiction at issue here is specific jurisdiction. Specific jurisdiction exists when (1) the plaintiff's claims relate to the defendants' contacts with the forum state, (2) the defendants purposefully availed themselves of the privilege of conducting activities in the forum state, and (3) the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See id.* at *2. All of those requirements are satisfied in this case.

**1. Defendants Have Contacts with Alabama that Relate to this Lawsuit.**

LSU has extensive contacts with Alabama that date back almost a century. ECF No. 5 ¶ 26. Those contacts stem from LSU's membership in and management of the SEC. *Id.* Because this case involves that membership and management, LSU's contacts with Alabama relate to the SEC's claims. *See id.* ¶¶ 26–27.

Defendants do not dispute these points. Defendants instead argue that even though they have been sued in their official capacities as agents of LSU, LSU's contacts with Alabama are irrelevant. ECF No. 27-1 at 15–16.

The Northern District rejected that same argument just last year. In *Weidley v. Aaniiih Nakoda Finance LLC*, 787 F. Supp. 3d 1255 (N.D. Ala. 2025), the plaintiffs sued the officers of an Indian tribe in their official capacities. *Id.* at 1269–

70. This Court held that, in an *Ex parte Young* lawsuit against government officials, the relevant contacts with the forum state are the contacts of the government entity that the officials represent. *Id.* at 1276–77. As a result, the Court had personal jurisdiction over the tribal officers "because the *Tribe's* contacts with Alabama satisf[ied] the minimum contacts requirement." *Id.* at 1277 (emphasis in original).

Other courts have agreed that the relevant contacts in an *Ex parte Young* lawsuit are those of the government entity.[2]

These holdings are correct. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). Based on that principle, personal jurisdiction logically depends on *the entity's* contacts with the forum state. *See Weidley*, 787 F. Supp. 3d at 1277; *Ass'n for Molecular Pathology*, 669 F. Supp. 2d at 394–96 & n.24.[3]

---

[2] *See, e.g.*, *Great W. United Corp. v. Kidwell*, 577 F.2d 1256, 1267–69 (5th Cir. 1978) (holding that a Texas court had personal jurisdiction over Idaho officials because of *Idaho's* contacts with Texas), *rev'd on other grounds sub nom. Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979); *Ass'n for Molecular Pathology v. U.S. Pat. & Trademark Off.*, 669 F. Supp. 2d 365, 394–96 & n.24 (S.D.N.Y. 2009) (holding that the contacts of an official's department are imputed to the official for purposes of personal jurisdiction), *aff'd in part, rev'd in part on other grounds*, 653 F.3d 1329 (Fed. Cir. 2011), *aff'd in part, rev'd in part on other grounds*, 569 U.S. 576 (2013); *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1188–90 (C.D. Cal. 2000) (similarly analyzing the contacts of other *states* with the forum).

[3] To be sure, under *Ex parte Young*, an official-capacity lawsuit for prospective relief is not treated as a lawsuit against a state for purposes of sovereign immunity. *See Graham*, 473 U.S. at 167 n.14; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). For all other purposes, however, an official-capacity lawsuit "is no different from a suit against the State itself." *Will*, 491 U.S. at 71.

Under these decisions, because the SEC has sued Defendants in their official capacities, LSU's contacts with Alabama are attributed to Defendants for purposes of personal jurisdiction. Defendants do not dispute that those contacts exist or that they relate to this case. Thus, the first element of specific jurisdiction is satisfied.

Even if personal jurisdiction depended on Defendants' own contacts, however, multiple Defendants would still have contacts with Alabama that relate to this case and, thus, are sufficient to support specific jurisdiction.

Defendants do not contest that three LSU officials—President Rousse, Athletics Director Ausberry, and Coach Kiffin—have contacts with Alabama, including their in-person attendance at SEC meetings in Birmingham. *See* ECF No. 27-1 at 16–17; ECF No. 5 ¶¶ 29–32. Defendants nevertheless argue that those contacts are irrelevant because this lawsuit is not based on those activities. *See* ECF No. 27-1 at 17. But for contacts to be relevant, they need not be *the source* of a lawsuit. They need only "relate to," or have a "connection" with, the lawsuit. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021); *accord, e.g.*, *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (emphasizing that the first element of specific jurisdiction "does not require direct causation").

The required connection exists here. This lawsuit is about LSU's membership in the SEC. LSU effectuates that membership through the Alabama contacts of its President, Athletics Director, and head football coach, among others. *See* ECF No.

5 ¶¶ 29–32. Thus, those contacts relate to this case. In addition, President Rousse personally attended the SEC's August 2026 meeting in Birmingham, where he voted in favor of the SEC's Policy Statement regarding its Professionalism Rules—a document that is at the heart of this case. *See id.* ¶¶ 30, 60–65. One of the SEC's central points in this lawsuit is that, despite that vote, President Rousse lacks the institutional control over others at LSU that is needed to ensure that LSU follows the Policy Statement and the Professionalism Rules. *See, e.g.*, *id.* ¶ 92. In this way as well, President Rousse's contacts with Alabama have the necessary connection to this lawsuit to support specific jurisdiction.

Attorney General Murrill likewise has contacts with Alabama that relate to this case.

A defendant has a contact with the forum when she commits an intentional tort that is aimed at the forum and that the defendant knows will cause injury in the forum. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 789 (1984); *SkyHop*, 58 F.4th at 1230; *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008).

Here, Attorney General Murrill committed an intentional tort: a violation of the SEC's First Amendment rights. *See, e.g.*, *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474 (9th Cir. 1995) (holding that a section 1983 claim for a constitutional violation is akin to a tort claim). She did so, among other ways, by supporting the *Pyburn* plaintiffs' effort to enjoin the SEC from enforcing its Professionalism Rules.

ECF No. 5 ¶¶ 34–35, 75. Attorney General Murrill aimed that conduct at the forum because she targeted the conduct at the SEC, an association headquartered in Alabama. *See id.* ¶¶ 12, 34–35, 75. Indeed, when the SEC filed this lawsuit in this Court, Attorney General Murrill called the lawsuit "legal garbage." *Id.* ¶ 75(d). She also knew that the SEC would suffer its injury in Alabama. *See id.* ¶¶ 12, 34–35, 75. Thus, the Attorney General has contacts with Alabama.

Those contacts also relate to this lawsuit. For example, Attorney General Murrill's coordination with the *Pyburn* plaintiffs is central to the SEC's claims. *See id.* ¶ 75; *supra* pp. 4–6. Defendants do not dispute this point.

In sum, Defendants have contacts with Alabama that relate to this case.

#### 2. Defendants Have Purposefully Availed Themselves of Alabama.

Defendants have also purposefully availed themselves of the privileges of conducting activities in Alabama.

The analysis of this second element overlaps with the analysis above. That is because one way for a defendant to engage in purposeful availment is to "purposefully direct [its] activities toward forum residents." *Morton*, 2026 WL 1165561, at *2 (quoting *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1317 (11th Cir. 2025)). Thus, when a defendant commits an intentional tort that is aimed at a forum resident and that the defendant knows will cause injury

in the forum, the defendant not only makes contact with the forum, but purposefully avails herself of the forum as well. *See, e.g.*, *SkyHop*, 58 F.4th at 1230.

Under these principles, Defendants have purposefully availed themselves of Alabama. Both LSU itself and the named Defendants have committed intentional torts by violating the SEC's First Amendment rights; they have aimed their conduct at Alabama by targeting an Alabama association; and they knew that the SEC would suffer its injury in Alabama. *See* ECF No. 5 ¶¶ 12, 33–35, 67–108.

Defendants do not deny these points. They instead argue that purposeful availment exists only when a defendant conducts activities under the forum state's laws. ECF No. 27-1 at 17–18. But that argument overlooks that purposeful availment also exists when a defendant aims intentional misconduct at the forum. *See SkyHop*, 58 F.4th at 1230.

In any event, even under Defendants' proposed test, purposeful availment still exists here. The SEC is organized under Alabama law. ECF No. 5 ¶ 12. Thus, the SEC conducts its activities under the laws of this state. LSU (and, by association, each Defendant) is involved in and benefits from those activities. For example, LSU participates in the management of the Conference and receives substantial revenue from Conference media agreements and Conference-sponsored events. *Id.* ¶ 26. Thus, LSU and Defendants purposefully operate under and benefit from Alabama law. As this Court observed recently, "a defendant must answer in a forum state's

courts if the defendant 'enjoys the benefits and protection of a forum's laws.'" *Morton*, 2026 WL 1165561, at *2 (quoting *Jekyll Island*, 140 F.4th at 1317). That is the case here.

**3. The Exercise of Jurisdiction over Defendants in this Case Comports with Fair Play and Substantial Justice.**

On the final element of specific jurisdiction, the burden of proof falls on Defendants. They must make a "compelling case" that this Court's exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice. *SkyHop*, 58 F.4th at 1229 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). This element depends on four factors: "the burden on the defendant"; "the forum's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; and "the judicial system's interest in resolving the dispute." *Id.* at 1231 (quoting *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1277 (11th Cir. 2022)). Here, far from making a compelling case that these factors defeat jurisdiction, Defendants offer a conclusory and unpersuasive one. *See* ECF No. 27-1 at 18.

First, Defendants argue that litigating in Alabama will burden them because "[t]hey are all in Louisiana." *Id.* As the Supreme Court recognized almost seven decades ago, however, "modern transportation and communication" had even then "made it much less burdensome" for a party to defend itself outside its home state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Defendants offer no evidence

or authority for the idea that, today, requiring them to litigate two states over is so burdensome that it defeats personal jurisdiction. Defendants' burden argument rings especially hollow for President Rousse, Athletics Director Ausberry, and Coach Kiffin, each of whom regularly travels to Alabama for SEC meetings and competitions. ECF No. 5 ¶¶ 29–32.

Second, Defendants argue that "Louisiana is the forum that plainly has the weightiest interest in adjudicating this dispute." ECF No. 27-1 at 18. But Defendants do not say why that might be true. In any event, Alabama has a "significant interest[ ]" in this case: an interest in "providing [its] resident[ ] with a convenient forum for redressing injuries inflicted by out-of-state actors." *Del Valle*, 56 F.4th at 1277 (quoting *Ford*, 592 U.S. at 368).

Third, Defendants appear to argue that litigating in Alabama would not be convenient for the SEC. ECF No. 27-1 at 18. The SEC's own decision to litigate in this Court defeats that argument. Defendants nevertheless assert that the SEC should have been content simply to litigate the *Pyburn* case in Louisiana, rather than filing this lawsuit. *Id.* But if that argument were right, it would mean that a party whose constitutional rights are violated by a lawsuit in another state could never sue in its own state to stop the violation. That would not make sense.

Finally, Defendants argue that "the judicial system should not tolerate the sort of gamesmanship that tries to haul Louisiana state officials in their official capacities

before an Alabama court." *Id.* As shown above, however, by deliberately violating the SEC's constitutional rights in Alabama, Defendants themselves created the contacts with this forum that justify holding them accountable in this Court. Defendants' assertion that the SEC is engaged in "gamesmanship" by following the law on personal jurisdiction is baseless.

In sum, this Court has personal jurisdiction over Defendants, and Defendants do not make any meaningful showing—let alone a compelling one—that the Court's exercise of that jurisdiction would violate due process.

### F. **Venue Is Proper in this District.**

Defendants' argument that venue is improper in this district, ECF No. 27-1 at 19, fails as well. On this issue, the SEC faces a "light" burden: It needs to show only that its chosen venue is "plausibly proper." *Goodwyn, Mills & Cawood, Inc. v. Black Swamp, Inc.*, 956 F. Supp. 2d 1323, 1327 (M.D. Ala. 2012). For the reasons below, the SEC surpasses that minimal burden here. As a result, the burden shifts to Defendants to show that venue is improper. *Id.* They fall well short of that burden.

Venue is proper in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Congress intended that this provision be construed broadly. *See* 17 James Wm. Moore et al., *Moore's Federal Practice* § 110.04[2] (3d ed.).

Two lines of decisions show that a substantial part of the events giving rise to the SEC's claims occurred in this district.

First, "in cases alleging a non-physical tort, it has been the common approach in the Eleventh Circuit that venue may be established under § 1391(b)(2) in the location where the plaintiff suffered harm." *AFC Franchising, LLC v. Prac. Velocity, LLC*, No. 2:15-CV-02150-SGC, 2016 WL 6024438, at *2 (N.D. Ala. Oct. 14, 2016); *see also id.* at *2 & n.2 (collecting cases).

Second, for constitutional torts in particular, courts have likewise "looked to the place of injury in assessing venue." 14D Richard D. Freer, *Federal Practice and Procedure* § 3806 n.21 (4th ed.); *accord, e.g.*, *Rosebud Sioux Tribe v. Trump*, 428 F. Supp. 3d 282, 295 (D. Mont. 2019); *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018). That is especially true in First Amendment cases, where the impact on a plaintiff's First Amendment rights is "the most important part of the case." *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009). Thus, for example, a district court in this circuit held that venue was proper because the harm to the plaintiffs' First Amendment rights would occur in the district at issue. *See League of Women Voters of Fla. v. Browning*, No. 08-21243-CIV, 2008 WL 11332046, at *2 (S.D. Fla. May 29, 2008); *see also, e.g.*, *Asgeirsson v. Abbott*, 773 F. Supp. 2d 684, 693 (W.D. Tex. 2011) (similar), *aff'd*, 696 F.3d 454 (5th Cir.

2012); *Media Matters for Am. v. Paxton*, 138 F.4th 563, 583 (D.C. Cir. 2025) (likewise considering the location of the plaintiff's First Amendment harms).

Under these decisions, venue is proper here. The SEC's claims are for non-physical torts—specifically, violations of its First Amendment rights. *See* ECF No. 5 ¶¶ 109–35; *supra* pp. 17–19. Thus, the SEC's First Amendment injuries are a substantial part of the events that give rise to its claims. There is no dispute that those injuries occurred in this district. *See* ECF No. 5 ¶ 25.

In addition to the SEC's harm, other events that give rise to the SEC's claims occurred in this district as well. Those events include the SEC's deliberations over professionalism issues and its decision to issue its Policy Statement and Professionalism Memorandum. *See id.* ¶¶ 25, 59–65. Those documents contain a substantial part of the protected expression on which the SEC's First Amendment claims rest. *See id.* ¶¶ 66, 113. The events in this district that give rise to the SEC's claims also include President Rousse's participation in the Birmingham meeting on the Policy Statement and Professionalism Memorandum, as well as Defendants' attendance at other SEC meetings and competitions in this district. *See supra* pp. 15–16.

Defendants do not address any of the above points. ECF No. 27-1 at 19. The arguments that Defendants do make are unpersuasive.

First, Defendants argue that only events that directly give rise to a claim are relevant under section 1391(b)(2). *Id.* As shown above, however, numerous events that occurred in this district directly give rise to the SEC's First Amendment claims. Those events include the SEC's First Amendment injuries, its decision to issue protected First Amendment expression, and President Rousse's own participation in that decision.

Second, Defendants quote *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366 (11th Cir. 2003), for the statement that a court must "focus on relevant activities of the defendant." ECF No. 27-1 at 19 (quoting *Jenkins Brick*, 321 F.3d at 1371–72). But neither that statement—a stray quotation from an Eighth Circuit decision—nor any other portion of *Jenkins Brick* prohibits courts in this circuit from considering any acts that have a "close nexus" to the underlying issues. *See* 321 F.3d at 1371–72 (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). As a court in this circuit has recognized, *Jenkins Brick* actually held that courts should consider *all* activities that have a close nexus to the wrong, whether those activities involve the defendant, the plaintiff, or both. *See Sterling v. Provident Life & Acc. Ins. Co.*, 519 F. Supp. 2d 1195, 1205 (M.D. Fla. 2007); *see also Jenkins Brick*, 321 F.3d at 1372 (considering activities such as the plaintiff's presentation of a contract to the defendant). The activities discussed above all have a close nexus to Defendants' violations of the SEC's First Amendment rights, so those activities are relevant under *Jenkins Brick*.

Third, Defendants point out that certain events occurred in Louisiana and imply that those events are more important than the events that occurred in Alabama. ECF No. 27-1 at 19. But the venue analysis is not a comparative one. *See, e.g.*, *Morgan v. N. Miss. Med. Ctr., Inc.*, 403 F. Supp. 2d 1115, 1122–23 (S.D. Ala. 2005). "[T]he question is simply whether 'a substantial part' of the events transpired" in this district. *Id.* at 1123. That is the case here.

Finally, in addition to asking for dismissal, Defendants make an alternative request to transfer this case under 28 U.S.C. § 1406(a). ECF No. 27-1 at 19. But that statute allows a transfer only when a case is filed in the "wrong" district. 28 U.S.C. § 1406(a). Thus, "[a] prerequisite to invoking Section 1406(a) is that the venue chosen by the plaintiff is improper." 14D Richard D. Freer, *Federal Practice and Procedure* § 3827 (4th ed.). Here, venue is proper. Thus, this Court should reject Defendants' motion to dismiss and their alternative request for a transfer.

### G. <u>The Amended Complaint States Valid First Amendment Claims.</u>

Defendants' attacks on the merits of the SEC's First Amendment claims also fail.

Defendants start by saying that "the United States has taken the position in other litigation that states have no First Amendment rights." ECF No. 27-1 at 20. Defendants then say that "if" the United States is correct on that point, the SEC

cannot sue Defendants for violating its First Amendment right of expressive association. *Id.*

This Court need not even consider these issues. "A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012). Here, Defendants do not argue that states lack First Amendment rights. They instead say that *someone else* made that argument in a different case and then hypothesize about what that argument might mean *if* it were correct. That "failure to make arguments" is a waiver. *Id.*

In addition, even if "states" lacked First Amendment rights, the SEC's members do not include "states." They include public universities. The United States did not argue in *Murthy* that public universities lack First Amendment rights. Nor do Defendants make that argument here. That is no surprise, because this argument would mean that the First Amendment offers no protection to LSU itself. Under that view, if other states banned LSU from advertising to students or speaking with recruits in those states, or if the federal government told LSU which classes to teach or which professors to hire, the First Amendment would have nothing to say about it. Defendants' refusal to take the bitter with the sweet on these points is another waiver.

In any event, the plaintiff in this case is not a state or even a public university. It is the SEC, an unincorporated nonprofit association. ECF No. 5 ¶ 12. Defendants offer no argument or authority for the idea that the SEC lacks its own First Amendment rights merely because its members include public universities. ECF No. 27-1 at 20.

Moreover, as Defendants admit, the SEC includes a private member: Vanderbilt University. *Id.* Defendants do not dispute that Vanderbilt has First Amendment rights or that the SEC can assert those rights on Vanderbilt's behalf. Defendants nevertheless suggest that, because the SEC also includes public universities, Vanderbilt cannot assert a freedom-of-association claim. *Id.* But that conclusion does not follow. The First Amendment protects Vanderbilt's freedom of expressive association, and LSU and Defendants are violating that freedom by forcing Vanderbilt to associate with messages and conduct that it disagrees with. *See* ECF No. 5 ¶¶ 101–02, 110–22. At a minimum, those violations of Vanderbilt's rights support the First Amendment claims in this case.

For these reasons, Defendants' theoretical musings about states' lack of constitutional rights do not defeat the SEC's First Amendment claims. Defendants fare no better on their more concrete arguments.

Defendants argue that the SEC lacks expressive-association rights because it was not organized *for the purpose* of First Amendment activities. ECF No. 27-1 at

21–22. But the Supreme Court rejected that argument in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000). There, the Court held that "associations do not have to associate for the 'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment." *Id.* at 655. Rather, "[a]n association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Id.* As Defendants admit, the SEC meets that description. *See* ECF No. 27-1 at 21 (conceding that the SEC has expressed its views on the topics here). And expression is part of the Conference's stated purpose. The SEC Constitution lists among the Conference's aims "[t]o provide leadership and a voice in the development of public attitudes toward intercollegiate sports generally." ECF No. 5 ¶ 37 (quoting SEC Const. § 1.2(e)).

Defendants also repeat their earlier argument that the SEC's injuries are self-inflicted. ECF No. 27-1 at 22–23. That argument fails for the reasons discussed above. *See supra* pp. 4–6.

Defendants next argue that "[n]o Defendant is alleged to have compelled or pressured the SEC into maintaining LSU's conference membership." ECF No. 27-1 at 23. That argument ignores that, as the SEC has alleged, Defendants' statements and conduct create a real threat they will interfere with the SEC's efforts to terminate LSU's membership in the Conference. *See* ECF No. 5 ¶¶ 75, 108, 120. Indeed, as

noted above, Defendants still have not sworn off that interference. *See supra* pp. 2–6, 8–9.

Defendants also miss the mark on this issue when they cite *National Rifle Ass'n of America v. Vullo*, 602 U.S. 175 (2024). *See* ECF No. 27-1 at 23. *Vullo* did not even involve an expressive-association claim. *See* 602 U.S. at 180–85. In any event, the *Vullo* Court stressed that a government official "cannot do indirectly what she is barred from doing directly." *Id.* at 190. That is what the SEC has alleged Defendants are doing here: threatening to use state-court proceedings filed by other parties to block, indirectly, the SEC's disassociation from LSU. *See* ECF No. 5 ¶¶ 75, 108, 120. For this reason, *Vullo* supports the SEC.

Finally, Defendants argue that their conduct does not violate the SEC's First Amendment rights because the SEC can "issue policy statements" and "criticize LSU." ECF No. 27-1 at 24. But if that argument were right, it would nullify the freedom of expressive association in every case. For example, in *Dale*, the Boy Scouts could have issued policy statements or criticized Mr. Dale. *See* 530 U.S. at 655. Likewise, in *Hurley*, nothing stopped the parade organizers from flying a banner with their own preferred message. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 574–76 (1995). But in those cases, the Supreme Court still held that forced association violated the Boy Scouts' and the parade

organizers' First Amendment rights. *See Dale*, 530 U.S. at 659; *Hurley*, 515 U.S. at 581. Those holdings defeat Defendants' argument.

In sum, the SEC has stated valid First Amendment claims, and Defendants fail to show otherwise.

### H. <u>While No Preliminary Relief Is Currently Needed, Nothing Prevents this Court from Granting Such Relief at the Appropriate Time.</u>

Because the SEC does not currently have a meeting scheduled to consider termination of LSU's membership in the Conference, no preliminary relief is needed at this time. The SEC therefore withdraws its Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 6) but expressly reserves the right to seek such relief if and when necessary. In any event, none of the arguments made by Defendants would prevent preliminary relief here.

Defendants first argue that a request for a TRO and preliminary injunction constitutes an improper collateral attack on the *Pyburn* case. ECF No. 27-1 at 24–25. To try to support that argument, Defendants mention the Anti-Injunction Act. *Id.* at 25. But as the SEC has shown, and as Defendants ultimately admit, the Anti-Injunction Act does not bar lawsuits, like this one, that are based on section 1983. *See* ECF No. 6 at 30 (citing *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972)); ECF No. 27-1 at 25. In *Mitchum*, the Supreme Court held unequivocally that "[Section] 1983 is an Act of Congress that falls within the 'expressly authorized' exception of"

the Anti-Injunction Act. 407 U.S. at 242–43. Accordingly, the Anti-Injunction Act poses no bar to this Court enjoining Defendants, pursuant to § 1983, from violating the SEC's First Amendment rights, including through actions taken in state courts.

Defendants then fall back on an appeal to "comity" and "federalism." ECF No. 27-1 at 24–25. Defendants never specify, however, which principles of comity and federalism they mean. Nor do they explain how an injunction would violate those principles. For example, the SEC showed in its opening brief that *Younger* abstention does not apply to this case. ECF No. 6 at 31. Defendants do not address that point.

Instead, Defendants cite the Eleventh Circuit's rejection of a "preemptive strike" in *McKusick v. City of Melbourne*, 96 F.3d 478 (11th Cir. 1996). ECF No. 27-1 at 24–25. But *McKusick* is nothing like this case. The plaintiff in *McKusick* sought a "general injunction" that would have ordered a city "to refrain from arresting without probable cause." 96 F.3d at 488. That injunction would have "thrust the federal court into an unseemly, repetitive, quasi-systematic, supervisory role" over state-court proceedings. *Id.* Any injunction in this case would be narrowly targeted towards prohibiting Defendants from obstructing the SEC's efforts to terminate LSU's membership. That relief would not require this Court to supervise any state-court proceedings, let alone in an "unseemly" or "quasi-systematic" way.

## III. CONCLUSION

A live controversy exists between the parties and no doctrine prevents this Court from adjudicating the SEC's claims against Defendants. The motion to dismiss should be denied.

Respectfully submitted this 13th day of October, 2026.

**ROBINSON, BRADSHAW & HINSON, P.A.**

By: */s/ Robert W. Fuller*
Robert W. Fuller*
N.C. Bar No. 10887
Amanda P. Nitto*
N.C. Bar No. 45158
Travis S. Hinman*
N.C. Bar No. 50779
600 S. Tryon Street, Ste. 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rfuller@rbh.com
anitto@rbh.com
thinman@rbh.com

Erik R. Zimmerman*
N.C. Bar No. 50247
1450 Raleigh Road, Suite 100
Chapel Hill, North Carolina 27516
Telephone: (919) 328-8800
Facsimile: (919) 328-8791
ezimmerman@rbh.com

* *Admitted pro hac vice*

**BRADLEY ARANT BOULT CUMMINGS LLP**

By: */s/ R. Thomas Warburton*
R. Thomas Warburton
T. Brooks Proctor
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
twarburton@bradley.com
bproctor@bradley.com

*Attorneys for Plaintiff Southeastern Conference*

**DISCLOSURE OF USE OF ARTIFICIAL INTELLIGENCE**

This document was generated with the assistance of Harvey. I hereby certify under penalty of perjury that, despite use of an AI tool, I have independently reviewed this document to confirm the accuracy, legitimacy, and use of good and applicable law, pursuant to Federal Rule of Civil Procedure 11.

Respectfully submitted this 13th of October, 2026,

By: *<u>/s/ Robert W. Fuller</u>*
Robert W. Fuller*
N.C. Bar No. 10887
Amanda P. Nitto*
N.C. Bar No. 45158
Travis S. Hinman*
N.C. Bar No. 50779
600 S. Tryon Street, Ste. 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rfuller@rbh.com
anitto@rbh.com
thinman@rbh.com

Erik R. Zimmerman*
N.C. Bar No. 50247
1450 Raleigh Road, Suite 100
Chapel Hill, North Carolina 27516
Telephone: (919) 328-8800
Facsimile: (919) 328-8791
ezimmerman@rbh.com

** Admitted pro hac vice*

By: *<u>/s/ R. Thomas Warburton</u>*
R. Thomas Warburton
T. Brooks Proctor
1819 Fifth Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
twarburton@bradley.com
bproctor@bradley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ R. Thomas Warburton*
OF COUNSEL