FILED
2026 Oct-20 PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

SOUTHEASTERN CONFERENCE,

PLAINTIFF,

v.

WADE ROUSSE, in his official capacity as President of Louisiana State University, et al.,

DEFENDANTS.

Civil Action No. 2:26-cv-01586-ACA

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................1

I. THERE IS NO ARTICLE III JURISDICTION. .........................................................1

II. THIS COURT LACKS PERSONAL JURISDICTION AND IS AN IMPROPER VENUE. .........................................................................................7

III. THERE IS NO VIABLE FIRST AMENDMENT CLAIM.............................................8

CONCLUSION ..........................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Ass'n for Molecular Pathology v. U.S. PTO*,
669 F. Supp. 2d 365 (S.D.N.Y. 2009) .......... 7

*Baker v. Univ. Med. Serv. Ass'n, Inc.*,
2016 WL 7385811 (M.D. Fla. Dec. 21, 2016) .......... 8

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000) .......... 9

*Burgess v. Religious Tech. Ctr., Inc.*,
600 F. App'x 657 (11th Cir. 2015) .......... 5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 2

*Fed. Repub. of Nigeria v. Ala. State. Univ.*,
604 F. Supp. 3d 1312 (M.D. Ala. 2022) .......... 8

*Gary v. City of Warner Robins, Ga.*,
311 F.3d 1334 (11th Cir. 2002) .......... 10

*Great W. United Corp. v. Kidwell*,
577 F.2d 1256 (5th Cir. 1978) .......... 7

*Hurley v. Irish-Am. Gay, Lesbian & Bisexul Grp. of Bos.*,
515 U.S. 557 (1995) .......... 10

*Lavina v. Florida Prepaid College Board*,
174 F.4th 49 (11th Cir. 2019) .......... 6

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 2

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) .......... 2

*Murthy v. Missouri*,
603 U.S. 43 (2024) ....................................................................................3

*PTI, Inc. v. Philip Morris Inc.*,
100 F. Supp. 2d 1179 (C.D. Cal. 2000)..........................................................7

*Rosenberg v. Gould*,
554 F.3d 962 (11th Cir. 2009).......................................................................5

*Stewart v. Ga. Highlands Coll.*,
2024 WL 7004565 (N.D. Ga. May 13, 2024) ..................................................8

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021).....................................................................3

**Other Authorities**

Cameron Salerno, *Will Wade explains LSU's 'unconventional' four-player roster: 'We're going to be unapologetic about it'*, CBS Sports (Sept. 23, 2026), https://tinyurl.com/3frn9fz3.......................................................5

Cameron Salerno, *Will Wade hints RJ Luis Jr. won't play for LSU due to SEC rules: 'He hasn't been rostered'*, CBS Sports (Oct. 13, 2026), https://tinyurl.com/4mczy346...................................................................5

ESPN, *LSU Tells SEC That Tigers Have Complied, Won't Disrupt Meeting* (Sept. 9, 2026), https://tinyurl.com/yhpxyurb...............................................................2

Letter from Wade Rousse, LSU President, to Greg Sankey, SEC Commissioner (Sept. 9, 2026) ..........................................................................................2

Olamilekan Ajayi, *LSU President Wade Rousse Sends Pointed Letter to SEC Boss Greg Sankey*, Yahoo! Sports (Sept. 9, 2026), https://tinyurl.com/3k4vwzne...................................................................2

**Rules**

Fed. R. Civ. P. 15(a)(2)....................................................................................4

## INTRODUCTION

It is unclear why the SEC has not dismissed this case. The SEC has abandoned its request for preliminary relief because it concededly faces no harm "at this time." Opp.30. It has abandoned its core allegations that LSU would "include two former professional athletes on its football roster" and "block or interfere with the September 10th meeting." Opp.1; ECF No. 5 ¶120. And it effectively concedes that its "First Amendment" claim is no constitutional claim at all: The SEC claims the "right to terminate LSU's membership in the Conference" (so there is no compelled association), Opp.1, 2, 3, 10, 12, while repeatedly complaining about LSU's supposed "defiance of the Conference's Professionalism Rules" (without identifying a single violation), Opp.1, 2, 3, 4, 6, 7, 9, 10, 16. So obvious is the case for dismissal that the SEC throws a Hail Mary: new (and demonstrably false) claims that the LSU men's basketball program is violating SEC rules. Enough is enough. There is no good reason to waste this Court's time and resources—the Court should summarily dismiss the SEC's complaint without prejudice to the SEC's ability to file a real case.

## ARGUMENT

### I. THERE IS NO ARTICLE III JURISDICTION.

1. Start with standing. As Defendants explained (Mot.8–9), the SEC's only alleged First Amendment harm arises from a supposed "forced association" between the SEC and LSU. ECF No. 5 ¶ 116. Yet the SEC alone possesses the power to terminate LSU's conference membership. *Id.* at 2. On September 10, the SEC met

"to decide whether to terminate [LSU] as an SEC member institution." *Id.* at 3. It declined to terminate. Opp.1. Any continued association with LSU is thus the SEC's choice, and self-inflicted harms cannot confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).[1]

In response, the SEC claims—*without citation*—that it fears LSU will interfere with any future attempts to terminate the University's membership. Opp.4. That claim has no basis in reality. Opp.1 ("Defendants did not block or interfere with the September 10th meeting"); *see* Letter from Wade Rousse, LSU President, to Greg Sankey, SEC Commissioner (Sept. 9, 2026)[2] ("At no point has LSU ever threatened to upset the meeting. But to be clear, LSU will not challenge, disrupt or seek to cancel or postpone this meeting."). And it is wildly speculative and hypothetical. *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (en banc) ("Where a 'hypothetical future harm' is not 'certainly impending,' plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves.'" (quotation omitted)). The SEC has no scheduled termination meeting

[1] The SEC oddly claims (Opp.5) that it need not "bet the farm" to establish standing—the SEC misunderstands the idiom. As the SEC's cited case explains, that concept arises in the context of a plaintiff who need not "violate [a challenged] law" and thereby "expose himself to liability" to establish standing. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). The SEC faces no such quandary, not least because it professes the "undisputed right to terminate LSU's membership in the Conference." Opp.3.

[2] *See, e.g.*, Olamilekan Ajayi, *LSU President Wade Rousse Sends Pointed Letter to SEC Boss Greg Sankey*, Yahoo! Sports (Sept. 9, 2026), https://tinyurl.com/3k4vwzne; ESPN, *LSU Tells SEC That Tigers Have Complied, Won't Disrupt Meeting* (Sept. 9, 2026), https://tinyurl.com/yhpxyurb.

(Opp.30) or *any* factual basis to assert—contrary to LSU's public representations—that LSU would somehow interfere with such a meeting. The supposed "interference" fear is thus entirely "conjectural or hypothetical." *See Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021).

Recognizing as much, the SEC pivots (Opp.4) to the *Pyburn* litigation[3]—but that switches injury theories and inadvertently proves that this is not a First Amendment case. The Article III injury SEC must establish is a First Amendment associational harm which, as the SEC recognizes, must flow from its supposed inability "to disassociate from LSU." Opp.6. The *Pyburn* litigation, by contrast, implicates the SEC's claim that its "Professionalism Rules" have been violated. Opp.4; *see* Opp.6. That is not an associational harm or a threat of such harm. And it shows (a) the SEC has no basis to claim imminent "interference" with its supposed First Amendment rights, and (b) the SEC's real beef traces to unspecified "Rules" violations via the *Pyburn* "litigation," Opp.6, which defeats standing here, *Murthy v. Missouri*, 603 U.S. 43, 57–58 (2024). Dismissal is plainly warranted.

2. The ripeness and mootness doctrines independently lead to dismissal. Ripeness provides the most natural route. The SEC does not address Defendants'

---

[3] The SEC's citationless claim (Opp.4) that Defendants are "[w]orking hand in glove with the *Pyburn* plaintiffs" is patently untrue. Opp.4. The SEC does not disclose that the *Pyburn* court *enjoined LSU itself*. And the SEC admits that LSU declined to roster the relevant *Pyburn* plaintiffs. Opp.1. If LSU sought to work hand in glove with the *Pyburn* plaintiffs, it has failed mightily.

argument that this case plainly is "not fit for judicial review" (Mot.11) because it lacks any factual foundation. And the SEC's claim of hardship from declining judicial review assumes that the SEC faces an "imminent risk" (Opp.10) of First Amendment harm—which, as just explained, does not exist.

So, too, under the mootness framework. The SEC admits that it has lost the complaint's core allegations. Opp.6 ("LSU did not roster two football players and did not interfere with the September 10th meeting of the SEC's Presidents and Chancellors."). Yet the SEC bizarrely claims that this "confirms" "the lack of institutional control the Amended Complaint describes." *Id.* As an initial matter, note that the SEC again inadvertently concedes this is not a First Amendment case: "[L]ack of institutional control," if it existed, might be a violation of the SEC's policies, but it is not a violation of the Constitution. ECF No. 5 ¶ 39. But more fundamentally, the SEC cannot seriously claim that LSU violated the SEC's policies by doing precisely what the SEC rushed to this Court to accomplish.

That the SEC has now resorted (Opp.2, 7, 9) to new allegations about the LSU men's basketball team—in a suit against LSU's football coach and based solely on allegations about who would "play football for LSU during the 2026-2027 season," ECF No. 5 ¶ 6—warrants a special response. Without seeking the Court's leave to amend its complaint, *see* Fed. R. Civ. P. 15(a)(2), the SEC now claims that LSU's men's basketball program is violating the SEC's rules. The Court should ignore that

Hail Mary because "plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)). More troubling, however, the SEC's new claim is demonstrably false. As early as September 23, Coach Will Wade publicly said: "We're going to abide by what the SEC tells us to abide by."[4] That was at the same press conference from which the SEC plucks (Opp.2, 7) phrases like "We're going to be unapologetic about it." As the full context shows, Coach Wade was "unapologetic" about building his roster in an unconventional way—not, as the SEC misleadingly suggests, violating SEC rules. The lack of candor is startling.

That is especially so because before the SEC filed its brief, Coach Wade reaffirmed this point: "We're going to follow all the SEC protocols[.]"[5] That meant that one basketball player—on which the SEC's brief stakes its new basketball allegations, Opp.2—"didn't travel with LSU" and "hasn't been rostered." "I think it's been pretty clear what the SEC protocols are on all that," said Coach Wade.

The SEC might be forgiven for being unaware of statements made the day it filed its brief—but the mischaracterization of Coach Wade's September 23 remarks,

---

[4] Cameron Salerno, *Will Wade explains LSU's 'unconventional' four-player roster: 'We're going to be unapologetic about it'*, CBS Sports (Sept. 23, 2026), https://tinyurl.com/3frn9fz3.

[5] Cameron Salerno, *Will Wade hints RJ Luis Jr. won't play for LSU due to SEC rules: 'He hasn't been rostered'*, CBS Sports (Oct. 13, 2026), https://tinyurl.com/4mczy346.

the entirely new basketball allegations, and the demonstrably untrue claim of "LSU's ongoing defiance of the Professionalism Rules in connection with its men's basketball team" (Opp.9) are deeply improper. They serve only to betray the SEC's awareness that there is no Article III case or controversy.

3. The SEC also has no answer to its independent sovereign-immunity problem. The SEC does not acknowledge *Lavina v. Florida Prepaid College Board*, 174 F.4th 49 (11th Cir. 2019) (cited at Mot.2, 12, 13), which forecloses this suit because it seeks to coerce Defendants' compliance with the SEC's rules. Instead, the SEC disputes the "premise," claiming that it does *not* seek "an order requiring LSU to 'perform' any contractual obligation." Opp.11. The SEC's own brief contradicts that claim by repeatedly complaining about LSU's failure to follow unspecified rules.[6] And that is why *Lavina* dooms the complaint: *Lavina* requires the Court to "determine the 'effect' of the requested relief," 174 F.4th at 53, and the "First Amendment" claim here depends on this Court's agreement that Defendants somehow have violated SEC rules and thus must be enjoined to allegedly preserve the sanctity of those rules. *Cf. id.* ("a party may not wiggle into *Ex parte Young*

[6] *See, e.g.*, Opp.1 ("ongoing defiance of the Conference's Professionalism Rules"); Opp.3 (LSU is "defying the Professionalism Rules and violating principles of institutional control"); Opp.4 (LSU "helped obtain state-court orders that bar the Conference from enforcing the Professionalism Rules"); Opp.6 (LSU has "impaired the Conference's ability to ... enforce the Professionalism Rules"); Opp.7 ("LSU men's basketball program continues to defy the Professionalism Rules"); Opp.8 (LSU has "submitted no declaration, sworn or otherwise, and their brief makes no commitment that LSU will comply with the Professionalism Rules").

through creative pleading" (cleaned up)). The SEC accidentally *acknowledges* this point. Opp.12 ("[The SEC] is asking the Court to protect the Conference's right to disassociate from LSU because of its refusal to follow the rules."). *Lavina* independently ends this case.

## II. THIS COURT LACKS PERSONAL JURISDICTION AND IS AN IMPROPER VENUE.

Given space constraints, Defendants add only two points to their opening brief. Mot.14–19. First, key SEC citations (Opp.14 & n.2) appear to be negligently supplied or hallucinated because they *reject* the in-line proposition that "the relevant contacts ... are those of the government entity"[7]—which confirms Defendants' point that the Court cannot assert personal jurisdiction over the Board Defendants who are not alleged to have Alabama contacts. Mot.15–16. Second, the SEC's assertion (Opp.16) that the Louisiana Attorney General "committed an intentional tort" in Alabama by filing a brief in Louisiana state court on Louisiana law should be rejected as outright absurd.

---

[7] *See Ass'n for Molecular Pathology v. U.S. PTO*, 669 F. Supp. 2d 365, 394–96 (S.D.N.Y. 2009) ("When confronted with the issue of specific personal jurisdiction over a non-forum state official, courts routinely examine *the contacts of the state officials in their capacity as representatives of the state* .... In light of the foregoing, the question of jurisdiction over the Directors should be resolved *based upon the Directors' contacts* ....") (emphases added); *Great W. United Corp. v. Kidwell*, 577 F.2d 1256, 1266 (5th Cir. 1978) ("The question is whether due process permits a court in Texas to exercise jurisdiction over *the Idaho official who has enforced the Idaho takeover law* .... [T]he Idaho official[] regulated a corporation that acts in the Northern District of Texas .... [and the effects] are more than sufficient to satisfy the minimum contacts requirement.") (emphasis added); *PTI, Inc. v. Philip Morris Inc.*, 100 F. Supp. 2d 1179, 1189–90 (C.D. Cal. 2000) (concluding that "the minimum contacts *of [the state official] defendants* [were not] sufficient") (emphasis added). The *PTI* parenthetical (Opp.14 n.2) misreads "state defendants" in *PTI* to refer to actual states, when *PTI* defined that term as state enforcement *officials*, 100 F. Supp. 2d at 1187.

## III. There Is No Viable First Amendment Claim.

Even if the Court could reach the merits of the SEC's "First Amendment" claim, that claim is frivolous. *See generally* Mot.19–24.

Start with the SEC's failure to state a coherent theory that a sovereign state has First Amendment rights. Of course a state has a right to speak—but, as the United States and the Fifth Circuit have explained (Mot.20), that right is better understood to flow from a state's sovereign nature, not the First Amendment. And there is no "freedom of association" among sovereigns; we just call that "federalism." So the SEC's "First Amendment" claim does not get off the ground.

The SEC tries to dodge that result on the ground that "[t]he SEC's members do not include 'states,'" "[t]hey include public universities." Opp.26. But public universities are arms of the state—and thus they are subject to the same rules. *See, e.g.*, *Fed. Repub. of Nigeria v. Ala. State. Univ.*, 604 F. Supp. 3d 1312, 1319 (M.D. Ala. 2022) (Alabama universities); *Baker v. Univ. Med. Serv. Ass'n, Inc.*, 2016 WL 7385811, at *2 (M.D. Fla. Dec. 21, 2016) (Florida universities); *Stewart v. Ga. Highlands Coll.*, 2024 WL 7004565, at *3 (N.D. Ga. May 13, 2024) (Board of Regents of the University System of Georgia). The SEC also observes (Opp.26) that if its members lack First Amendment rights, then so does LSU—which the SEC believes LSU could not stomach. But the SEC does not understand the constitutional point: Each SEC school, including LSU, has an unquestionable right to speak—the

only issue is the source of that right. If it is not the First Amendment (and for 15 schools, it is not), then the SEC has no freedom-of-association claim.[8]

The SEC claims that "Vanderbilt has First Amendment rights [and] that the SEC can assert those rights on Vanderbilt's behalf." Opp.27. But the SEC does not respond to Defendants' point (Mot.20) that this "boil[s] down to the claim of an association-of-one," which "[b]y definition, [] is not a viable freedom-of-association claim." The SEC retorts (Opp.27) that the SEC itself has First Amendment rights. But that does not change the fact that the SEC has only one member with First Amendment rights. And with what other First Amendment-protected entity does the one-member SEC associate for purposes of this claim? The SEC does not say.

In all events, the "First Amendment" theory is even worse on the merits. By the SEC's definition, Opp.28, quite literally every organization or association is an "expressive association" simply because it speaks. That is not the law. The SEC overreads (Opp.28) *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), when it said that an association need not gather for the purpose "of disseminating *a certain message* in order to be entitled to the protections of the First Amendment." *Id.* at 655 (emphasis added). *Dale* did not change the black-letter rule that the association must at least associate for the purpose of *engaging in speech*—*i.e.*, "expressive

[8] The SEC complains (Opp.26) that LSU did not press this argument firmly enough. That this was LSU's lead argument forecloses that complaint. Mot.20 (enumerating this argument "*First*"). And the SEC clearly understood as much by dedicating two-and-a-half pages to this issue. Opp.25–27.

association." *Gary v. City of Warner Robins, Ga.*, 311 F.3d 1334, 1338 (11th Cir. 2002). And there is no serious argument that the SEC fits that profile. Mot.21–22.

More, the SEC completely misunderstands—or intentionally ignores—why its freedom-of-association claim makes no sense. Defendants' motion could not have been clearer: Unlike in the Supreme Court's freedom-of-association cases, "this is not a case where a plaintiff complains of being forced by an external party to associate with an unwelcome member—*this plaintiff itself is maintaining the association*." Mot.22. In response, the SEC's brief repeatedly doubles down on its claim that it holds the "undisputed right to terminate LSU's membership in the Conference." Opp.3. That is as free as freedom gets. And the SEC avoids saying anything about how the freedom-of-association cases foreclose the SEC's claim.

To the extent the SEC acknowledges those cases at all, it is to erect inapt analogies. Opp.29. *Dale* would have come out differently if there were no New Jersey public accommodations law and the Boy Scouts kept Mr. Dale in their ranks anyway. Similarly, *Hurley v. Irish-Am. Gay, Lesbian & Bisexul Grp. of Bos.*, 515 U.S. 557 (1995), would have come out differently if there were no Massachusetts public accommodations law and the private parade organizers simply allowed the LGBT organization to march. All the same here.

## CONCLUSION

This case should be dismissed.

Dated: October 20, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Zachary Faircloth*
ZACHARY FAIRCLOTH (LA 39875)*
Principal Deputy Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 421-4088
Facsimile: (225) 326-6795
FairclothZ@ag.louisiana.gov

Taylor, Porter, Brooks & Phillips L.L.P.
Robert W. Barton, Louisiana Bar #22936*
450 Laurel Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: (225) 387-3221
Facsimile: (225) 346-8049
Email: bob.barton@taylorporter.com

Bruce F. Rogers
BAINBRIDGE MIMS ROGERS & SMITH, LLP
600 Luckie Drive
Suite 415
Birmingham, Alabama 35223
Telephone 205-879-1100
Facsimile 205-879-4300
Email: brogers@bainbridgemims.com

*Counsel for Defendants*

**Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF filing system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 20th day of October, 2026.

*/s/ Zachary Faircloth*
Zachary Faircloth